State ex rel. Folsom Bros. vs Mayor and Administrators of the City of New Orleans.

## No. 7447.

STATE EX REL. FOLSOM BROS. VS. MAYOR AND ADMINISTRATORS OF THE CITY OF NEW ORLEANS.

Under Article 209 of the Constitution of 1879, the city of New Orleans has no power to levy a tax in excess of Ten mills on the dollar; and it cannot be compelled by Mandamus to exercise a power which it does not possess; unless in cases where said Article 209 would be violative of the Constitution of the United States.

This Constitutional limitation does not apply merely to taxes levied for the ordinary expenses or purposes of municipal government, but to all taxes levied by municipalities for any purposes whatever.

The State Constitution, when it does not conflict with that of the United States, is omnipotent in its disposition, and even, destruction, of private and social, rights; and no Court has the power to question the validity of any provision of such State Constitution, however unwise or unjust it might be, if not repugnant, as aforesaid, to the Federal Constitution.

A State may pass laws divesting vested rights, without infringing the Federal Constitution.

Claims arising from a tort, and not from a contract, are not protected by the clause of the Constitution of the United States, which forbids a State to pass laws impairing the obligation of contracts.

Judgments rendered upon torts cannot, in any manner, be considered as contracts.

Article 209 of the Constitution of 1879 does not conflict with the Constitution of the United States, nor with the 14th Amendment thereof, so far as the Relators in this case are concerned, because their claim arises not from a contract, but from a tort.

APPEAL from the Third District Court, parish of Orleans. *Monroe,*. J.

Robert Mott and Thos. J. Semmes for Relators and Appellees :

The obligation on the part of the city to make good losses sustained by mobs is a statutory obligation and not a tort, nor is it an obligation arising out of an offense or quasi offense, for such an obligation arises out of some act of the obligor, whereas in the case of the city, the obligation arises out of an act not done by the city or any of its officers or agents, and hence it is not an offense or quasi offense, and, therefore, it is an obligation like that imposed by law on co-terminous proprietors, in regard to party walls ; it is an obligation therefor imposed by law upon the city, and is in its nature a stipulation *pour autrui,* that is, an obligation imposed by law on the city in favor of a third person, which obligation like any other stipulation *pour autrui* becomes perfect by the institution of suit to enforce the obligation. If it be an obligation of that sort, it is protected like any other obligation, by the Constitution of the United States, which prohibits the passage of a law impairing the obligation of contracts ; for every obligation under the civil law, except that arising from offenses or quasi offenses, is a contract, in the sense of the Constitution, that is to say, it is an obligation which cannot be impaired.

46

The limitation on the power of taxation only applies to the ordinary purposes of government, to what the city in this case calls the alimony of the city ; it does not apply taxation to meet any other than ordinary municipal purposes.  See Butz vs. City of Muscatine, 8 Wall. 578.

The law in force when our right was acquired or judgment rendered could not be altered to our prejudice.  Memphis vs. United States, 7 Otto, 294, or 97 U. S. 294.

We had a right of property conferred on us by law ; and by the Fourteenth Article of the Constitution of the United States, we cannot be deprived of the same without due process of law.

The State Constitution of 1868 says : "No law impairing the obligation of contracts shall be passed, nor *vested rights be divested."*

The Constitution of 1879 says : "Nor any law impairing the obligations of contracts shall be passed, nor vested rights be divested."

The right of recovery for injury done is so sacred that it is considered worthy of protection.

Wade on Retroactive Laws, p. 122.

Where an act of negligence produced personal injury for which the person suffering the same was entitled by the existing law to recover the full amount proved, it was held that a subsequent statute limiting the recovery to a less sum would not affect the rights of the injured party.  He had a vested right not only to compensation for his injuries, but the measure of the damages fixed by the law as it existed when the cause of action occurred.

Ray vs. Pennsylvania R. R. Co., 65 Pa. State, 269.

The same principle is held to govern the assessment of damages for injuries to private property in the exercise of the right of eminent domain, the right of recovery was for the property and damages, a subsequent change of the law, held to be insufficient to exonerate the city from the duty imposed by the law when the damage was inflicted.

Elgin vs. Eaton, 83 Ill. 535.

Clayhug vs. City of Chicago, 25 Ill. 535.

The People ex rel. Decatur and C. R. R. Co. vs. Roberts, 62 Ill. 38.

*In re* Townsend, 39 N. Y. 171.

Wynehamer vs. The People, 13 N. Y. 378.

The People vs. Howe, 37 Barbour, 440.

Taylor vs. Porter, 4 Hill, 140.

And when such damages are assessed, the right to recover the amount awarded becomes vested in the party whose property has been taken, and is not lost by the repeal of the statute by which the assessment was authorized, nor even by a positive enactment.

The People vs. Supervisors of Westchester, 4 Barbour, 64.

These cases are identical in principle with ours.

The rights secured to either party to a suit by an adjudication of the matter in controversy between them are proprietory rights, which the constitution will protect.

Wade on Retroactive Laws, section 171.

Memphis vs. U. S., 7 Otto, 294.

It was urged that the relators had no right to a mandamus to have a tax levied to pay all judgments before theirs; at first the idea seemed to have something in it, but nothing in fact.

The relators asked for what the law required, that all the judgments registered before theirs be paid; this could only be done by taxation; if they were not in the category which entitled them to the tax of one and three quarters per cent, the city knew that fact, and should have shown it. The relators did not know what the judgments were for, or when the cause of action accrued; if the city did not show, the relators could not; it was greatly to the advantage of the relators to exclude the other judgments, and they now consent to their being excluded, and that the mandamus be made perpetual to levy a tax of one and three quarters per cent to pay their judgments described in their petition.

E. Howard McCaleb, City Attorney, for Defendant and Appellant:

The judgment of the court *a qua* is erroneous because:

The city of New Orleans cannot be compelled by mandamus to levy taxes to pay her judgment creditors, in excess of the limitation imposed by sec. 6 of Act No. 31 of 1876, commonly known as the " Premium-Bond Law." U. S. *ex rel.* Learned vs. City of Burlington, vol. 2, No. VII; p. 394, N. S. Amer. Law Register ; Cooley on Taxation, p. 524 ; 8 Wall. 579 ; 18 Wall. 71 ; Burroughs on Taxation, § 129, p. 375 *et seq.;* Dillon, Munic. Corporations, § 610, p. 611 ; 29 An. 661.

That law does not violate the Federal Constitution. Relators' judgments were for damages *arising from a tort,* and not upon a contract. 28 An. 936. Cooley on Taxation, p. 56, and pp. 252, 253.

The opinion of the Court was delivered by

FENNER, J.  Folsom Bros., relators herein, are holders of two judgments against the city of New Orleans, the same being for damages done to their property by a mob or riotous assemblage within the limits of said city, in 1873, for which the city was liable under section 2453 of the Revised Statutes.

One of said judgments, for $2000, became final on July 3d, 1874; the other, for $26,858, became final in December, 1877. They were

properly registered in the office of the Administrator of Public Accounts, on January 15th, 1876, and January 15th, 1877, respectively, in accordance with the provisions of Act No. 5, Extra Session of 1870.

In their petition herein they state the foregoing facts, and further aver that other judgments against the city to a large amount had been registered prior to their own, and that it was the duty of the city officers to place them all on the budget, and to levy and collect taxes to pay them ; that said city officers had failed and refused to perform said duty ; that being prohibited by law from issuing executions upon their said judgments, they are without other remedy except through the levy of taxes for their payment ; and that the refusal of the city to levy such taxes deprives them of all remedy, and ·is in violation of their vested rights and of the constitutions and laws of the United States and of the State.   They prayed for a writ of mandamus commanding the proper officers of the city to place upon the budget for the year 1879, and all succeeding years until the same be fully paid, all the registered judg-ments, including those of relators, and to impose taxes, in addition to all other taxes required for other expenses, to an amount sufficient to pay and satisfy the whole of said registered judgments.

The officers of the city made return substantially, that under the provisions of Act No. 31 of 1876, the power of the city to levy taxes, for any purpose whatever, was limited to one and one half per cent upon the assessed value of taxable property ; that the necessary alimony of the government must be provided for before debts can be paid ; and that the revenues derived from taxation to the aforesaid limit of the law, and from all other sources, would not be sufficient to provide for the said necessary alimony of the city government.

The learned judge of the lower court was of opinion that under section 19 of Act No. 7 of 1870, which was in force in 1873, at the time when the causes of action upon which relators' judgments were rendered, originated, the taxing power of the city was only limited to one and three quarters per cent ; that this taxing power so fixed constituted the sole remedy for the enforcement of their claims ; that the right to diminish or destroy this taxing power involved the diminution or destruction of the sole remedy of relators, and could not be exercised to the prejudice of relators' vested right to such remedy.

The court, therefore, made the mandamus peremptory so far as to order the budgeting of all judgments prayed for in succeeding years ; and that with a view to the payment thereof, respondent be ordered to levy taxes to the extent of one and three quarters *per cent*, as prescribed by section 19 of Act No. 7 of the Extra Session of 1870.

From this judgment, which was signed on February 5th, 1879, the ·city took this suspensive appeal.

The first thing that attracts judicial cognizance on the very face of this record, is, that any decree rendered by us herein, ordering the levy of taxes by the city of New Orleans, must operate prospectively only. The past is beyond recall and beyond remedy. If we should affirm the decree appealed from, the effect would be to order the city of New Orleans, in its next and succeeding tax-levies, to impose and collect a tax of one and three quarters per cent until all the judgments referred to in the decree are settled. The mere statement of this proposition irresistibly recalls the provision of article 209 of the Constitution of 1879, which provides "that no parish or municipal tax *for all purposes whatever* shall exceed ten mills on the dollar of valuation."

It is impossible to conceive of any form of expression in which the intention of the framers of the Constitution to restrict absolutely the power of municipal taxation within the limit of ten mills on the dollar could be more positively asserted.

A tax levied by the city of New Orleans is unquestionably a " municipal tax." Such a tax levied for the purpose of paying debts, is yet a tax levied for a purpose, and falls within the all-embracing expression "all purposes whatever." And when thus much has been said, it involves the inevitable conclusion that if the constitutional provision is to be operative, and is not restrained in its effect by some higher authority, the city has not the power to levy a tax in excess of ten mills on the dollar, and we cannot compel the city to exercise a power which it does not possess.

Attempt is made by counsel for relator to restrict the limitation of this constitutional provision to taxation for the ordinary purposes of government. If such had been the intention of the framers, it would have been easily and naturally expressed. The language used not only does not convey, but absolutely excludes such construction of its meaning. It is, besides, notorious that the object of the limitation was not merely to restrain the extravagance of administrators of municipal corporations, but to relieve property from the burden of excessive taxation.

The cases relied on to impose this restrictive meaning upon the clause referred to are without application.

McCracken vs. San Francisco, 16th California, 591, applied to an article of a city charter, providing that "the common council shall not *create nor permit to accrue*, any debts or liabilities which shall exceed $50,000 over and above the annual revenues of the city;" and held that this only applied to voluntary acts or contracts of the council creating liabilities, and not to liabilities cast upon her by the law, independent of any contract or permission of the council. Such appears to us to be the only possible meaning that could be derived from the language used

in the charter itself, and we see nothing in that case that touches the one at bar.

The case of Butz vs. Muscatine, 8th Wallace, 575, has still less application. There, it is true, there was a provision in the charter of the city of Muscatine, limiting the power of taxation to one per cent, but there were also co-existing provisions in the general laws of the State requiring corporations, against which judgments had been rendered, after execution returned unsatisfied, to levy a tax as early as practicable to pay off such judgments. In effect, the court merely held that the restriction in the charter did not repeal said general laws, and did not apply to the duty of corporations thereunder to levy taxes to pay judgments. It is evident, we have here no such co-existing statutes to be interpreted together ; nor was the language of the Muscatine charter so broad as that of our Constitution.

Moreover, in the subsequent case of United States vs. Supervisors, 18 Wall. 71, the decision in the above case was substantially overruled. Having thus determined the meaning of this constitutional provision, let us now examine the power of the Constitutional Convention to pass such a provision.

The learned judge of the lower court, in his able opinion, was dealing with questions very different from those which we are now discussing. He was considering the effect of mere legislative acts. He held that inasmuch as, at the time when the obligation sought to be enforced by relators originated, the city had the power to levy a tax of one and three quarters per cent, and as the sole remedy for the enforcement of said obligation was through the exercise of said taxing powers, therefore, " if that power could be diminished by subsequent legislation, it might with the same propriety, be withdrawn altogether." That, he said, could not be done. Why? Because, in his own language, " it would operate a *divestiture* of the remedial *right* which had existed in the relators." In other words, the judge held that the subsequent legislative acts restricting the city's power of taxation could not apply to relator's right previously existing, because such application would operate to divest a vested right, in violation of art. 110 of the Constitution of the State then in force.

It is unnecessary for us to review the decision of the district judge on this point, because the limitation on the power of the Legislature, imposed by the Constitution of 1868, has no force over the power of the Constitutional Convention.

A constitution framed by a convention of the people, especially after having been submitted to and ratified by a direct vote of the people, is the ultimate expression of the will of the sovereignty itself. Its provisions may control, with plenary power, all private and social

rights, and all existing laws and institutions, and may even violate the most fundamental rules of justice ; provided, only, they do not conflict with the provisions of the Constitution of the United States, which, with regard to the subjects covered by them, and to those subjects alone, form the paramount law of the land. No court has the right to question the validity of any provision of a State Constitution, however unwise, impolitic, or even unjust it may be, upon any other ground whatever than that it violates the Constitution of the United States.

Cooley on Constitutional Limitations, p. 34.

It follows, therefore, that the provision of the Constitution of 1879 must have full operation and effect, against all persons and against all rights, except so far as its operation is restrained by the Constitution of the United States. It follows, to come more directly to the exact point at issue here, that no person can require the city of New Orleans to levy a greater tax than one per cent, unless he can establish a right in himself to require the levy of such higher tax, and unless he can also show that said right is so protected by the Constitution of the United States, that it could not be taken away by any action of the State. If the State *can* destroy such right, it *has* destroyed it by this provision of its Constitution.

To begin with, it is settled by an uninterrupted current of authorities that a State may pass laws divesting vested rights without infringing the Constitution of the United States.

Charles River Bridge vs. Warren, 11 Pet. 420.

Watson vs. Mercer, 8 *id.* 88.

Sutterlee vs. Matthewson, 2 *id.* 413.

Railroad Co. vs. Nesbitt, 10 How. 395.

Matter of Oliver, Lee & Co.'s Bank, 21 N. Y. 9.

The only provisions of the United States Constitution which could be invoked as protecting relators' alleged right here, are :

First. The provision forbidding a State to pass any law impairing the obligation of a contract.

Second. The provision of the 14th amendment forbidding the State to " deprive any person of life, liberty, or property without due process of law." .

The first provision has no application here. Relator has no right of any kind arising from a contract, express or implied, and no other rights are within the protection of this provision.

It is settled that claims arising from a tort, and not from a contract, are not so protected.

Dash vs. Vankleck, 7 Johns. 477.

Amy vs. Smith, 1 Litt. 326.

Thayer vs. Seavey, 11 Me. 284.

The position of counsel that this is not an obligation arising from a tort, but an obligation imposed by law on the city in favor of a third person, and in the nature of a stipulation *pour autrui* accepted by such third person, and therefore equivalent to a contract, is not sustained by any authority. The only case in which we have found that question adverted to holds distinctly that "those rights which the law gives to, or obligations which it imposes upon, persons in certain relations, independently of any stipulations which the parties themselves have made," are not within the protection of this clause.

Robinson vs. Howe, 13 Wis. 341.

We are, however, unable to perceive any distinction between the obligations arising under section 2453 of the Revised Statutes and those arising under the articles of the Civil Code relative to offenses and quasi offenses. It merely expressly extends to municipal corporations that responsibility for damage occasioned by their fault or negligence, or by the fault or negligence of their servants or overseers, which rests upon natural persons under articles 2315, 2316, and 2320 of the Civil Code. It has been a subject of frequent judicial discussion, and of contradictory decisions, whether or not such responsibility would not attach even in absence of such special statute, on the grounds that powers are granted to municipal corporations especially designed to enable them to preserve peace and order, and that it is their duty so to exercise such powers as to afford adequate protection to property against mobs and riots. It cannot be doubted that these principles are the underlying reasons of the statute. But, whatever may be the source of these obligations, it is plain, they do not spring from contract.

It is suggested, however, that whatever may have been the origin of relators' rights against the city, their judgments, at least, are contracts, and within the protection of this constitutional clause. We are unable to discover any principle upon which to base such a doctrine. In the early and leading case of Fletcher vs. Peck, 6 Cranch, p. 136, Chief Justice Marshall, in defining what is meant by the word *contract* as used in this very clause, said : "A contract is a compact between two or more parties." In the later case of Green vs. Biddle, 8 Wh. 92, the word contract, in the same connection, was defined to be "the agreement of two or more parties to do or not to do certain acts." It thus appears from the decisions of the highest Federal tribunal, that the word "contract" as used in the Constitution is to be interpreted according to the meaning attached to it, in ordinary language, and under all systems of law.

We are at a loss to perceive what features of such a contract attach to judgments. as such. Far from being agreements or compacts between the parties, they are usually the sequence of violent contests, and

are imposed upon the losing party by a higher authority, against his will and protest.

It has been distinctly held by high authority that "a judgment is not an agreement, contract, or promise in writing."

Todd vs. Crumb, 5 McLean, 172.

The Supreme Court of the United States has expressed its opinion upon this question in terms which, though perhaps *obiter*, leave no doubt that the views here expressed by us would receive its sanction. It said: "It may be doubted whether a judgment not founded upon an agreement, express or implied, is a contract within the meaning of the constitutional prohibition. It is sometimes called by text-writers a contract of record, because it establishes a legal obligation to pay the amount recovered, and, by fiction of law, where there is a legal obligation to pay, a promise to pay is implied. But it is not perceived how this fiction can convert the result of a proceeding not founded upon an agreement, express or implied, but upon a transaction wanting the assent of the parties, into a contract within the meaning of the clause of the Federal Constitution which forbids any legislation impairing its obligation. The purpose of the constitutional prohibition was the maintenance of good faith in the stipulations of parties against any State interference. If no assent be given to a transaction, no faith is pledged with respect to it, and there would seem, in such case, to be no room for the operation of the prohibition."

Garrison vs. City, 21 Wall. 203.

These views are in harmony with the reasons and principles underlying the constitutional provision referred to, and we have no hesitation in adopting them.

See, also, Forsyth vs. Marbury, R. M. Charlt. 324.

Second. It is next contended that this restriction in the Constitution of 1879, *quoad* the right of relators, violates that provision of the 14th amendment of the Constitution of the United States forbidding the State "to deprive any person of life, liberty, or property without due process of law."

It cannot be, nor to our knowledge has it ever been, contended that this provision is the equivalent, in meaning and effect, of those provisions so common in State Constitutions which forbade the passage of laws divesting vested rights.

It is not necessary for us to refer to the many limitations which were imposed by judicial interpretation upon the terms "vested rights," even under those express provisions. The 14th amendment, by its very terms, refers only to "property" and no "vested rights" can be included within that term, by any stretch of interpretation, except "vested rights" in and to "property." Giving to the word "property" its

State ex rel. Folsom Bros. vs. Mayor and Administrators of the City of New Orleans.

broadest signification, so as to include every thing susceptible of owner-ship, movable or immovable, corporeal or incorporeal, it cannot possibly be extended to remedies given merely for the enforcement of property-rights. Still less can the power of taxation of a municipal corporation be a subject of ownership by any individual, in such sense, that the diminution or taking away thereof by the competent power can be con-sidered as depriving him of his property.

The decisions bringing remedies, to a certain extent, within the opera-tion of the Federal prohibition of laws impairing the obligations of contracts, by no means recognize any rights of property therein, but rest upon the very different principle laid down in the leading case of Ogden vs. Saunders, 12 Wheaton, 213, that "parties must be understood as making their contracts with reference to existing laws, and impliedly assenting that such contracts are to be construed, governed, and con-trolled by such laws."

We have thus carefully examined every ground upon which the re-lators herein can possibly claim that their right to the remedy herein invoked is protected from the operation of the adverse provision of the State Constitution.

We shall always be found ready to yield, and to enforce, obedience to the requirements of the Federal Constitution; but, where those re-quirements are not violated, we must, as mandataries of the State, recognize her Constitution as our sole procuration, defining and limiting our powers, and we can neither do, nor direct to be done, nor permit to be done, any thing in violation of the provisions thereof.

It is, perhaps, superfluous to say that the rights of contract cred-itors will be passed upon only when presented for our adjudication.

It is therefore ordered, adjudged, and decreed that the judgments herein appealed from be reversed, and that the mandamus prayed for be denied, relators paying costs of the lower court and of this appeal.