## LEONARD *v.* CITY OF SHREVEPORT.

*(Circuit Court, W. D. Louisiana.* August, 1886.)

1. COURTS—UNITED STATES COURTS—JURISDICTION.
   A circuit court of the United States, since the passage of the act of 1875, has original jurisdiction over all cases where a United States law, whether constitutional or congressional, is involved.
2. SAME—FEDERAL QUESTION—STATE CONSTITUTION—PROVISION PRACTICALLY IMPAIRING A CONTRACT.
   A provision of a state constitution limiting the rate of taxation to a figure so low as to necessitate the breach of a contract for the payment of money, previously made by the taxing power, may be contested in a federal court as involving a question under the constitution of the United States.

Plea to Jurisdiction.

*A. H. Leonard,* for plaintiff.

*E. H. Randolph,* for the City.

BOARMAN, J. All the parties to this suit are citizens of Louisiana. The question raised by the plea to the jurisdiction presents this inquiry, do the allegations in the petition show that a federal question will have to be passed on, by way of claim or defense, before an exigible judgment can be given by the court trying the suit? The rule governing the jurisdictional power of the circuit court to hear or try all federal questions, concurrently with the state courts, is fixed by repeated decisions of the supreme court. As to the rule, it has been said: "If a part of a case turns on a federal law, the circuit court has jurisdiction," *(Osborn* v. *Bank of U. S.,* 9 Wheat. 738;) and that "cases arising under the law of the United States are such as grow out of the legislation of congress, whether they constitute the right or privilege or claim or protection or defense of the party, in whole or in part, by whom they are asserted." *Railroad Co.* v. *Mississippi,* 102 U. S. 135. The rule governing jurisdiction is the same whether the constitution or laws of the United States be involved.

In *Starin* v. *New York,* 115 U. S. 257, S. C. 6 Sup. Ct. Rep. 31, Chief Justice WAITE, in considering whether the pleadings then before him showed a federal question, said:

"The character of a case is determined by the questions involved. * * * If, from the questions, it appears that some title, right, privilege, or immunity, on which recovery depends, will be defeated by one construction of the constitution, or a law of the United States, or sustained by the opposite construction, the case will be one 'arising under the constitution or laws of the United States,' within the meaning of that term as used in the act of 1875; otherwise not."

From this it appears that if some title, right, privilege, claim, or immunity is shown by the allegations to be in the plaintiff, which cannot be made complete and effective, in law or in equity, unless the court should consider and pass upon a provision of the federal con-

stitution, then the court, whether state or federal, trying the case, will have to sustain or defeat his action in accordance with its judicial construction of the constitution of the United States.

Applying these suggestions, let us see what plaintiff's petition discloses: It shows that defendant owes the debt for which an exigible judgment should be given; that the debt sued on is evidenced by a contract agreement, binding in law against defendant; that at the time the contract was entered into between the parties the city could lawfully collect a revenue based on — per cent., with which to discharge all of the municipal obligations; that now, when the plaintiff has fully complied with his obligations, the city, in consequence of article 209 of the state constitution, passed since the date of said contract, can lawfully collect only 7 per cent. with which to discharge all of her liabilities, governmental expenses, or that 7 per cent. tax will not supply revenue enough to pay more than the alimentary expenses of the city government; that execution, if judgment should be given to the plaintiff in any court, state or federal, could not operate on the fund necessary for such alimentary purposes; that the city had ample means, or had ample lawful power, to levy and collect revenues beyond the sum required for alimentary purposes when plaintiff's contract was entered into, and that now the city has the same amount or more of taxable property that she had at that time, but her legal power to levy and collect revenue beyond her alimentary necessities is denied to her by article 209; that she has no property subject to seizure for plaintiff's debt.

If these statements be true, it is clear that article 209, by limiting the taxing power of the city to a per centum less than she could collect when the contract was entered into,—to 1 per cent.,—has impaired the power of the city to pay the debt contracted with plaintiff; and it is equally as clear that no court passing upon the right of plaintiff to have the obligations of said contract effectually enforced against defendant corporation could give an exigible judgment that would authorize and command the city to levy and collect an increased per centum of tax, unless the court annuls and makes void, as between the parties, the effect of article 209 on plaintiff's rights. Except in deference to the paramount law, no court has the judicial power to command the city to levy and collect a higher per centum, for any purpose, than the 1 per cent. fixed in the state constitution. But for the conservative force of article 1, § 10, of the United States constitution, the plaintiff would, in consequence of article 209 of the state constitution, be without a remedy, however much disposed any court might be to make his claim, right, title, protection, or immunity good against defendant.

In *State* v. *City of New Orleans*, 32 La. Ann. 714, the court, citing a number of authorities to show that the state cannot pass laws divesting vested rights without infringing on the constitution of the United States, said:

"It follows, therefore, that the provisions of the constitution of 1879 must have full operation and effect against all persons, and against all rights, except in so far as its operation is restricted by the constitution of the United States. It follows, to come more directly to the exact point at issue here, that no person can require the city of New Orleans to levy a greater tax than 7 per cent., unless he can establish a right in himself to require the city to require the levy of such higher tax, and unless he can also show that said right is so protected by the constitution of the United States that it could not be taken away by any action of the state. If the state can destroy such right, it has destroyed it by this provision of the constitution."

The case involves the same issues in this court that it would if it was in the state court. It is clear, from what we have recited from Justice FENNER, that no relief in any tribunal could be given the plaintiff herein without passing upon the effect of article 1, § 10, of the United States constitution, which inhibits the impairment of vested rights, by article 209 of the state constitution.

The laws operative at the time of the contract measure or define the rights and powers of the parties. These laws enter into, and become a part of, the contract which is made by the parties; the law enforces the obligations. The right to invoke all the lawful powers of the city, and to have all the remedies then existing for the effectual enforcement of the obligations, immunities, privileges, and protections vested in the parties to the contract, are within the protection of the article of the United States constitution which forbids the impairment of the obligations of a contract. Unless this court can judicially command an increased rate of taxation, in the interest of plaintiff, article 209 has certainly destroyed the rights vested in him by the laws existing when the contract was entered into, and they cannot be made effectual in his favor unless the effect of that article as to him is avoided. Its avoidance can be judicially pronounced only and solely because of the repugnancy of article 209 to the inhibitions in article 1, § 10, of the United States constitution.

The allegations setting forth plaintiff's cause of action show that all the revenues accruing from the 1 per cent. tax are required for alimentary purposes. This allegation must be taken for true. The law will not allow any part of such revenues to be paid to plaintiff. They show, too, that at the time the contract was entered into the defendant corporation had the power to levy a higher rate of taxation. The law vested in the plaintiff the right to have that amount collected, if it became necessary in order to pay him. On the trial of this case, if plaintiff sustains these allegations, he will have established in himself a right to require a higher tax to be levied by defendant, and the court will not be forbidden, by article 209, to command the higher tax to be collected for the benefit of plaintiff; because, in the face of the paramount law, that article must be held to be an infringement of his vested rights, and therefore void as to him. The life of a judgment lies in the power to execute it. No exigible judgment can be given plaintiff, who is certainly entitled to such a judg-

ment if his cause of action is sustained, without passing upon the effect of article 1, § 10, of the United States constitution, on plaintiff's right to such a judgment.

The act of 1875 was intended to enlarge the original jurisdiction of the circuit courts, and to extend it over suits which could not have been, prior to its passage, heard or tried in such courts. If this suit had been filed since act of 1875, in the state court, either party, both being citizens of the same state, because of the subject-matter involved, could have removed it to this court. If it had been tried in the state court prior to that act, on the facts admitted for the purposes of this plea, and relief in the way of an exigible judgment 'had been denied by that court, the case could have been taken up on a writ of error to the supreme court. It would seem that if this suit, as now presented in plaintiff's allegations, could in the first instance have been removed to the circuit court, and if in the second instance named it could have been taken up on a writ of error to the supreme court, the suit involves a federal question, and it is now within the jurisdiction of this court. Before the act 1875, which has been said, judicially, to have expended all the jurisdictional power which congress, under the constitution, can give to the United States courts, the circuit court depended for its original jurisdiction upon the citizenship or other qualifications of the parties or persons. Then, if a suit between citizens of the same state involved a federal question, it could not, simply because it involved such a question, be tried originally in the circuit court, nor could it be removed thereto; but the suitors would have had to file and try their suit in the state court, and then such a suit might or could reach the United States supreme court on a writ of error. A suit filed in the state court prior to the act 1875 could not, because it presented a federal question, be removed to the circuit court; now, without reference to citizenship of the suitors, it can, if it involves such a question, be removed by either party. Prior to the said act a suit between citizens of the same state could not be removed solely because of its subject-matter; now a suit can be removed without reference to citizenship, if it involves a federal question, and such a suit can now be tried originally in this court, under act of 1875. There are certainly some suits that, though they might be removed under the several acts providing for removal of suits, could not be tried as original suits in the circuit court; but this is not such a suit as would fall within the exception.

Plea to jurisdiction overruled.