## BENEDICT v. CITY OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. August 6, 1917.)

No. 207.

1. COURTS ☞284—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.
    Where a suit involves a real and substantial controversy respecting a federal question, raised in good faith, the jurisdiction of a federal court does not depend on diversity of citizenship, nor on the validity of the claim asserted.

2. MUNICIPAL CORPORATIONS ☞371—IMPROVEMENTS—SPECIAL FUND—EXPRESS TRUSTS.
    A legislative act, appointing commissioners to make a city improvement and to pay for the same by the issuance of improvement certificates, payable only out of a special fund, to be created by the levy and collection by designated city officers of assessments on the property within the district, created a statutory trust for the benefit of the holders of the certificates, enforceable against all parties charged with its execution.

3. TRUSTS ☞365(2)—SUIT TO ENFORCE—LIMITATION.
    Where in such case the city treasurer, charged by the statute with the duty of selling the property, the assessments against which remained unpaid after 10 years, sold certain of the property for less than the assessments against it and accrued interest, the result being the cancellation of all liens and leaving insufficient in the fund to pay outstanding certificates, such action was an open repudiation of the trust, which gave holders of certificates an immediate right of action for its breach, and a certificate holder, who, with knowledge of such action, delayed bringing suit until it was barred by limitation under the laws of the state, will not be given equitable relief in a federal court.

4. COURTS ☞375—FEDERAL COURTS—FOLLOWING STATE STATUTE OF LIMITATIONS.
    In the absence of any statute of limitations enacted by Congress, the federal courts of equity usually follow the state statutes, even in suits which depend upon or arise under the laws of the United States.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. TRUSTS ☞365(2)—STALE DEMANDS.
        Where a complainant delayed for 17 years after the open repudiation of a trust before making any persistent effort to enforce it, he will be denied relief in equity on the ground that his demand is stale.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Elias C. Benedict against the City of New York. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 235 Fed. 258.

This cause comes here on appeal from the United States District Court for the Southern District of New York. The complainant is a citizen of the state of Connecticut, and brings his bill against the defendant, a municipal corporation organized under the laws of the state of New York, and having its principal place for conducting its business in the Southern district of that state, being a resident thereof. The bill of complaint is a voluminous one, and covers 49 printed pages. The complainant sues on his own account and on behalf of all others similarly situated.

It appears that defendant is sued as the successor of Long Island City, which became annexed to and consolidated with the city of New York by chapter 466 of the Laws of 1901 of the state of New York. The city of Long Island City, being at the time a municipal corporation of the state of New York, prior to June 11, 1879, issued and delivered to Farwell, Sage & Co., through its treasurer and receiver of taxes, certain certificates amounting in the aggregate to the sum (face value) of $8,000, which certificates were payable with interest at the rate of 7 per cent. The certificates were issued to Farwell, Sage & Co. under a certain contract between that company and the city of Long Island City for the opening up of certain streets in that city. Each and every one of these certificates was assigned to the complainant prior to June 11, 1879, and he at all times since has claimed to be the lawful owner and holder thereof. These certificates, part of a total issue of $1,847,500, have never been paid, although complainant has made demand and taken various steps for their collection.

The certificates were issued under chapter 326 of the Laws of 1874 of the state of New York. The statute in question created an improvement commission, which was authorized to make certain improvements in what was then known as the First ward of Long Island City. For the purpose of paying for the improvements, the commission was authorized to issue certificates. To secure payment of these certificates, assessments were levied on certain properties in Long Island City. The statute provided that if, at the end of 10 years, the assessments were not paid, the properties could be sold by the treasurer and receiver of taxes of Long Island City.

Complainant's proposition is that the members of the commission and their employés, and those who assisted them in the performance of their duties under that legislation, were local officers of Long Island City, and that that municipality, and its successor, the present defendant, is liable for their wrongful acts. And he contends, in particular, that the defendant and its predecessor were guilty of a breach of an express statutory trust.

The trust which complainant relies upon is alleged to have been created by the act of 1874, which established an improvement fund for the payment of the improvement certificates, and which directed that it should be set apart and administered for the benefit of the certificate holders. The method by which the fund was to be provided will appear more fully in the opinion which follows. The breach of the trust which is alleged to have been committed grows out of certain acts of the treasurer of Long Island City, which had the effect of impairing the improvement fund and leaving unpaid a large number of the certificates including those held by the plaintiff. The facts relating to the breach will appear more fully hereafter.

The District Court dismissed the bill, without costs.

Reed & McCook, of New York City, for appellant.
Lamar Hardy, of New York City, for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). [1] The first matter to be considered is that which relates to the jurisdiction of the court. In the court below the defendant did not raise the question, and the District Judge made no reference to it in his opinion. But the defendant in his argument in this court has asserted a want of jurisdiction in the court. The claim rests upon that section of the Judicial Code (section 24) which provides that:

"No District Court shall have cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made, etc." U. S. Compiled Statutes (1916) Annotated, § 991.

The argument is that, if no assignment had been made of these certificates by Farwell, Sage & Co., of the city of New York, to whom they were originally issued, no suit could have been brought, as there would not have been the requisite diversity of citizenship. Therefore it is said the complainant, as the assignee of Farwell, Sage & Co., cannot maintain the suit as the subject-matter of the suit is choses in action, and the bill contains no averment that suit could have been maintained by the assignees, if no assignment had been made. And counsel call our attention to the fact that the Supreme Court has held in a series of cases beginning with Turner v. Bank of North America, 4 Dall. 8, 1 L. Ed. 718 (1799), that the presumption is that a cause is without jurisdiction of the court, unless the facts which confer jurisdiction are set forth upon the record.

The complainant's brief, however, contains the following statement:

"The allegations in the bill of complaint, and the decree appealed from, make it clear that a federal constitutional question is raised. That such a question is raised under the pleadings appears from Penn Mutual, etc., Co. v. Austin, 168 U. S. 685, 695, 18 Sup. Ct. 223, 42 L. Ed. 626; Leonard v. City of Shreveport (C. C.) 28 Fed. 257."

It is evident that the complainant bases his right to sue, not upon diversity of citizenship, although he is a citizen of Connecticut and defendant is a citizen of New York, but upon the ground that a federal question is involved. The federal question presented is that complainant claims that he has been deprived of his property without due process of law, and that the obligation of the contract under which the certificates sued upon were issued has been impaired by certain legislation of the state of New York. Where the right claimed is founded, as it is in this case, on a federal question, diversity of citizenship of the parties is immaterial and unnecessary. Elk v. Wilkins, 112 U. S. 94, 5 Sup. Ct. 41, 28 L. Ed. 643. The jurisdiction does not turn upon the validity of the claim set up, but upon the fact that there is a real and substantial controversy respecting a federal question. The

claim that the contract has been impaired is made in good faith, and is not frivolous, and the court has jurisdiction. Pacific Electric Ry. Co. v. Los Angeles, 194 U. S. 112, 24 Sup. Ct. 586, 48 L. Ed. 896.

This brings us to inquire as to the real merits of the controversy. The Laws of 1871 of the State of New York, chapter 765, entitled "An act to provide for the laying out of streets, avenues, roads and parks in Long Island City," named certain persons therein designated as commissioners for the purpose of performing the acts and duties prescribed by the statute, including the power to grade, sewer, and pave streets within the district described. The Laws of 1871, chapter 461, tit. 6, § 23, entitled "An act to revise the charter of Long Island City," and in force when the certificates were issued, provided that all sales for taxes in that city should be made for the shortest period for which any person would take the premises and pay the taxes or assessments, interest percentage and expenses.

The Laws of 1874, chapter 326, entitled "An act to provide for improvements in and adjoining the First ward of Long Island City," directed the commissioners to ascertain and certify to the board of assessors the expenses of the grading, sewering, paving, etc., provided for in the act. It required the estimated cost to be assessed upon the several lots within the improvement district, and declared that the assessment should be a lien on the property assessed to the extent of the amount assessed, together with the interest at the rate of 10 per cent. per annum. The interest was to commence to run three months after the filing of the assessment roll, and was to run until the assessment with interest was fully paid. Section 5 of the act provided as follows:

"No warrant shall be issued or required for the collection of any assessments under this act; nor shall any warrant be issued for any sale of lands for nonpayment of such assessments until ten years after the filing of such assessment roll; but all lots, pieces or parcels of land on which any assessment under this act shall remain unpaid on and after the day of the expiration of ten years after the filing of the assessment roll, affecting the section or subdistrict in which the lot is located, shall be advertised and sold for the payment of such unpaid assessment; and such sale or sales shall be made by the receiver of taxes or other officer then charged by law with the duty of selling lands in said city for nonpayment of city taxes and the proceedings for such sale, and such sale shall be the same and on the same notice and like terms; and said lots or parcels of land so sold may be redeemed, and in default of such redemption title thereto shall be given and perfected in the same manner, to the extent and with the same force and effect. * * *"

Section 6 of the act provided as follows:

"* * * The improvement certificates hereinafter provided for shall be receivable at all times at par and accrued interest in payment of any assessment under this act, and of the interest accrued thereon. All moneys received by said treasurer in payment of such assessments or interest shall be placed to the credit of the improvement fund, consisting of the amounts in the hands of the treasurer growing out of payments of said assessments, and interest, and shall be kept separate and apart from any other moneys in his hands, and no part of said fund shall ever be paid out by him, except for the purchase of such improvement certificates as provided in the seventh section of this act, or as is herein otherwise provided. * * *"

Section 9 of the act authorized the commissioners, in order to pay the expenses of the improvements, to issue from time to time, and as required by and under the contracts made by them, certificates of indebtedness, which certificates should be known as the "Improvement Certificates in Long Island City." It provided that such certificates should be paid out at par to contractors for payment falling due to them upon contracts for work or materials furnished. It provided that:

"They [certificates] shall be receivable at all times, at par and accrued interest in payment of any assessments laid under this act and of the accrued interest thereon and shall be payable with interest as aforesaid in the manner hereinabove provided, out of any moneys which shall come into the said treasurer's hands to the credit of said improvement fund."

It also provided that:

"On receiving any of said certificates in payment of assessments or interest, or by purchase, as hereinbefore provided, said treasurer shall cancel such certificate," etc.

Section 11 of the act provided:

"Upon the completion of the sales for the nonpayment of the assessments levied, as hereinabove provided, of the lots and parcels of land in said improvement district, after the expiration of ten years from the filing of the assessment rolls, all the certificates issued by the said commissioners shall be paid off," etc.

The laws of 1879, chapter 501, section 10, provided that at the sale of any lot for nonpayment of assessments it should be the duty of the officer making the sale to receive the improvement certificates in payment of the assessments, and that such certificates when received by him should be permanently canceled.

In 1886 an act was passed governing tax sales in Long Island City, known as chapter 656. This act authorized the city treasurer to sell lands at public auction for nonpayment of taxes or assessments and provided that such sales should be—

"for the lowest term of years for which any purchaser will take the same and pay the aggregate amount due thereon, and if no person shall so offer to purchase such property for a term of years, said treasurer or his representative shall sell such parcel in fee simple, to the highest bidder. * * * Said treasurer shall bid in, in the name of the city for the use of the proper fund or account, all parcels of real estate at such sale, and to be sold for unpaid taxes, assessments, water rates and rents, which shall not be sold to any other person.". Section 4.

The act also provided, if real estate so sold was not redeemed as provided for in the act, the treasurer should execute to the purchaser a lease, or, if sold in fee, a conveyance, which conveyance should vest in the grantee an absolute estate in fee, and that the lien or liens for which the same had been sold should thereupon be canceled.

The improvements made under the act of 1874 were considerable and expensive, and converted what was a vast meadow or swamp of practically no value into a valuable property. Streets were laid out, graded, and sewered. A large proportion of these streets were curbed, guttered, flagged, and paved. The contractors who did the work were paid

in improvement certificates, which they took at par. These certificates were payable only out of an improvement fund, which we have seen the law required to be raised by assessments levied upon the property benefited, and which constituted a lien upon each lot to the amount of its assessment, with a penalty charged for delayed payments.

The law under which the certificates were issued provided for a sale of the lots assessed in case of the nonpayment of the assessments levied, and as a large portion of the assessments remained unpaid it became necessary for the treasurer of Long Island City to advertise the lots for sale. The first sale occurred in December, 1888. At that sale the amount bid for each lot was equal to or in excess of the amount of the assessment. But in 1892 and 1893 subsequent sales were made, and lots were sold for much less than that for which they were assessed. In some instances sales were made for only 5 per cent. of the assessment, and the average price at which the lots were sold was 40 per cent. of the amount of the assessment. The result, in short, was that the improvement fund which the act of 1874 provided for, and out of which the certificates alone were payable, was not produced in the amount originally contemplated, and after all the lands assessed had been sold there were certificates having a face value of $300,000 which were left unpaid, and with no fund out of which payment could be made as originally provided. It appears that the plaintiff acquired a number of these unpaid certificates. They came into his possession as a member of the banking house of Benedict, Flower & Co. He was the senior member of that house, and Mr. Flower, who was associated with him, afterwards became Governor of the state of New York. This house advanced to the contractors, Farwell, Sage & Co., the money which was used in making the improvements, and for the moneys so advanced Benedict, Flower & Co. received payment in certificates issued to the contractors by the authorities of Long Island City. The certificates sued upon, as has been heretofore mentioned, aggregate the sum (face value) of $8,000, and were received by the plaintiff as a part of his share in the assets of the firm of Benedict, Flower & Co., and on its dissolution in 1875 he has been the owner and holder of them ever since.

The plaintiff does not claim that any primary obligation to pay the certificates existed on the part of Long Island City; and this suit is not brought to enforce any such liability. He does not claim that the certificates were in the nature of promissory notes for the payment of money, given by Long Island City as promisor. The plaintiff claims:

(1) That the commissioners appointed under the act of 1874 for the purpose of making certain improvements in Long Island City, to pay for which the certificates were issued were the agents and representatives of the city, for whose acts the city was liable.

This the defendant denies, and asserts that the commissioners were independent public officers, and not servants or agents of the municipality. This question, for reasons hereinafter appearing, the court does not find it necessary to determine.

The plaintiff also claims:

(2) That the treasurer and receiver of taxes of Long Island City was a local officer and agent of the city in the performance of the acts performed by him in and about the conduct of the assessment sales herein mentioned, and that for his acts the city was in like manner liable.

This the defendant likewise denies. This question, for reasons hereinafter appearing, the court also finds is unnecessary to pass upon.

The plaintiff also claims:

(3) That the treasurer, and therefore Long Island City, was in fault because lots assessed for the improvements made were sold for less than the assessments and accrued interest, and for not preserving the lien of the assessments intact.

This the defendant likewise denies, and calls attention to the decision of the Court of Appeals of New York in Nelson v. Bleckwenn, 137 N. Y. 565, 33 N. E. 338, which affirmed without opinion the judgment of the General Term for the Second Department, reversing the action of the court below in issuing an injunction against the treasurer of Long Island City, which restrained him from selling any of the lots for less than the face value of the assessment and from receiving in payment improvement certificates instead of cash. The General Term expressly held that the treasurer might accept bids for less than the amount of the assessment and still accept the certificates in payment. This the court thought allowable under the acts of 1879 and 1886. The question as to whether these acts violated the Constitution of the United States was not discussed and does not appear to have been considered.

The plaintiff contended on the argument before us that the acts violate the federal Constitution, in that the construction placed upon them by the New York courts deprives him of property rights vested in him by virtue of the act of 1874 as the only way in which the liens of the assessments could be made secure and paid was by a sale of lots for the full amount of the assessments. Upon that question it may well be that this court is not concluded by the decisions of the state courts. But in the view we take of this case, and for reasons which will be stated in a subsequent part of this opinion, we are not called upon to determine whether the statutes referred to are void as to this plaintiff, as depriving him of his property without due process of law, or as impairing the obligation of the contract contrary to the provisions of the Constitution of the United States.

[2] The plaintiff also claims:

(4) That the act of 1874 created a statutory or express trust, in that it provided for an improvement fund out of which the certificates were to be paid; the act imposing no liability to pay the certificates except out of that fund.

We have seen that section 6 of that act, heretofore set forth, required that all moneys received by the treasurer of Long Island City in payment of the assessments or interest should be placed to the credit of the improvement fund, which was to consist of the amounts in the hands of the treasurer growing out of payments of the assessments and interest. This fund the statute required to be kept separate and apart from

other moneys in his hands, and no part of the fund could be used, except for payment of the certificates. The right of the certificate holders was therefore a right to have the fund properly collected and administered. The making of the assessments, the collection of the assessments, and the maintenance and disbursement of the fund were duties specifically imposed upon the commissioners, assessors and treasurer of Long Island City. We are not disposed to question that this created a statutory trust for the benefit of the certificate holders. The statute provided for the creation of a certain fund previously ascertained in amount to be raised by assessments upon certain property, and that the fund so established should be kept distinct and apart from any other moneys or funds, and should be applied to the sole purpose of the redemption of the certificates. There is thus provided a certain person (the treasurer of Long Island City) in whom is to be vested the legal title to a distinct and separate fund or res which is to be held for the beneficial use of certain persons (the certificate holders). There is a definite subject and an ascertained object; and, where a specific property is directed to be collected and set apart and applied to a specific purpose, equity raises by implication an express trust to effectuate the intended object. The courts have decided so often as to make unnecessary the citation of authorities that one who receives money to be paid to another, or to be applied to a particular purpose, is a trustee, and if he does not apply it he may be sued in equity for a breach of trust.

The complainant insists that, while the city treasurer was made the recipient of the fund and charged with its collection and disbursement, he took it as an officer of Long Island City, or as its agent, and that the trust was imposed upon the city in its corporate capacity. The certificates which were issued were in form as follows:

"Improvement Certificate.[1]      $————.

"No. ————.      State of New York, Long Island City.

"January 6, 187—.

"This is to certify that Farwell, Sage & Co., or bearer, is entitled to ———— dollars, with interest thereon at the rate of 7 per cent. per annum, from the date hereof, payable out of the improvement fund in Long Island City, established under chapter 326 of the Laws of New York, passed May 5, 1874, entitled 'An act to provide for improvements in and adjoining the First ward of Long Island City,' this certificate being issued under the provisions of said act, and the said amount and interest being payable as provided therein.

"$————.      P. G. Van Alst,

"Wm. Bridge,

"H. S. Anable, Commissioners.

"Countersigned: John R. Morris, Treasurer of Long Island City.

"$————.      $————."

---

[1] The following is a copy of the back of the certificate.

"This certificate is one of the improvement certificates in Long Island City issued under the provisions of the act within mentioned. It draws interest at the rate of 7 per cent. per annum and is receivable at par and accrued interest at any time in payment of any assessment laid under said act and of the accrued interest on such assessment.      Allen & Chard."

The names signed were those of attorneys.

It will be observed that the certificate contains no promise to pay, except out of an improvement fund, and that it is not issued by Long Island City, although it is countersigned by the city treasurer. And it seems to be a matter of common knowledge that Long Island City, at the time the act of 1874 was passed, was in an unfortunate financial condition. It has been described as being at that time "an impoverished, taxridden community." And it is quite easy to understand that the Legislature intended to take the subject of these improvements out of the hands of the usual representatives of the city and lodge it in independent commissioners.

The defendant, in strenuously denying that any trust was imposed upon the city, gives as its reasons the following allegations of what it conceives to be the facts: That Long Island City, as such, was not authorized to issue the certificates involved, or to make the improvements for the payment of which the certificates were issued, or to levy the assessments, but that power was lodged in independent officers; that the city, as such, was not authorized to collect any of the assessments after they were levied, or to foreclose the liens of the assessments by selling the properties, but that power was vested in an independent officer, the city treasurer. And defendant insists that no obligation was imposed in terms upon the city either to create or to maintain the redemption fund; and it insists, further, that Long Island City could not have been a trustee, as under the terms of the statute it was not invested with title to the assessments and to the moneys which were received from the sale of the properties. The conclusion it deduces from the facts assumed is that no express trust, and no duty in the nature of a trust, and no power in trust, was imposed upon the city for the benefit of the certificate holders.

But, as we stated in an earlier part of this opinion that it was not necessary to determine whether certain officers were mere agents of the city or not, so, for reasons about to be stated, it is not necessary now to say whether the trust which we think came into existence in connection with the issuance of the certificates was one imposed upon the city in its corporate capacity, or simply upon the official whose duty it was to collect and disburse the fund.

[3] The plaintiff also claims:

(5) That in the sale of the lands for less than the amount of the assessments, with interest, and in receiving in payment therefor certificates, instead of the currency of the country, and in canceling the assessments before payment in money had been made in full a gross breach of the trust was committed, by reason of which the fund provided to be raised for the payment of the certificates under the terms of the act of 1874 was never raised. He therefore asks that the trust be recognized and enforced, and that an accounting be had of the amounts that would have been received by Long Island City and its treasurer from the sale of the lands, if the same had been sold for the full amount of the assessments, with interest, as required by the law as it stood when the certificates were issued, and that the amount due upon the certificates owned by him be ascertained and be decreed to be paid to him.

Admitting that a trust was imposed, and conceding for the purposes of the argument that the acts complained of amounted to a breach of the trust there is no escape from the conclusion that they constituted an open, definite, and final repudiation of the trust. For the result of the course taken was to make it impossible that a redemption fund should be obtained out of which payment of plaintiff's certificates could be made.

It is also apparent that this open and final repudiation of the trust was known to the plaintiff's agent in 1892. That agent testified that he had entire charge of all the plaintiff's interests in Long Island City at that time, and that he was present at the sales made in 1892, and protested verbally and in writing against the course the treasurer pursued and the specific acts now complained of, and that he was then told by that official that he should do exactly what was done. This repudiation of the trust then and there made to the agent thereby became the knowledge of the principal, the plaintiff herein; for the knowledge of the agent is the knowledge of the principal, so that the plaintiff knew of the conduct complained of 17 years before the present suit was commenced. This, in our opinion, is the crucial fact in this case. This it is which makes it impossible for him to maintain this suit at this late day. This it is which makes it immaterial whether the trust was imposed upon the city or upon the city treasurer in his individual capacity; and this it is which made it unnecessary to consider whether the various persons engaged in these transactions acted as agents of the city or as independent officers.

Statutes of limitation do not run against express trusts until openly repudiated, to the knowledge of the cestui. They do, however, begin to run at that time. Such is recognized to be the law in the courts of New York (Zebley v. Farmers' Loan & Trust Co., 139 N. Y. 461, 34 N. E. 1067), and in the courts of the United States (New Orleans v. Warner, 175 U. S. 120, 130, 20 Sup. Ct. 44, 44 L. Ed. 96). The principle is recognized generally throughout this country, as well as in England.

[4] In the absence of any statute of limitations enacted by Congress, the federal courts of equity usually follow the state statutes; and they do this even in actions which depend upon or arise under the laws of the United States. O'Sullivan v. Felix, 233 U. S. 318, 322, 34 Sup. Ct. 596, 58 L. Ed. 980. The complainant is here asserting an equitable right, and it is true that as a general rule the equity jurisdiction of the United States is not affected by state laws. That principle cannot be invoked however to deprive a federal equity court of the power to refuse relief to a suitor whose right is barred by a state statute of limitations. Such statutes are not binding upon federal courts in suits in equity, yet those courts may and generally do apply the statutes upon principles of analogy; and such statutes have been applied by these courts to claims against trustees. The Supreme Court said in Wagner v. Baird, 7 How. 233, 257, 12 L. Ed. 681 (1849), that:

"In cases of concurrent jurisdiction, courts of equity consider themselves bound by the statutes of limitation which govern courts of law in like cases;

and this rather in obedience to the statutes, than by analogy. In many other cases they act upon the analogy of the limitations at law."

Authorities to support the above statement are numerous and decisive. Godden v. Kimmell, 99 U. S. 201, 210, 25 L. Ed. 431. We think the action is barred under the New York statute; if not under the 6-year statute (Code of Civil Procedure, § 382), then under the 10-year statute (Code of Civil Procedure, § 388).

The treasurer's duty to collect the assessments by making sales of the property assessed was a duty which he was bound to perform under the act of 1874 after the expiration of 10 years from the filing of the assessment rolls. If he failed to perform it, or performed it improperly, a cause of action then accrued. In the case at bar the cause of action arose at the time the treasurer repudiated the obligation to create and maintain the improvement fund. After the sales of the assessed properties in 1892 and 1893, there was no property of any kind in the hands of the treasurer out of which payment of these certificates could be made, and no property out of which the redemption fund could be created.

[5] But if no statute of limitations existed, either state or national, there would still be a reason why this suit would fail. It is a general principle of equity that stale claims ought not to be encouraged. In Sullivan v. Portland & Co., 94 U. S. 806, 811, 24 L. Ed. 324, Mr. Justice Swayne, speaking for the Supreme Court, said:

"To let in the defense that the claim is stale, and that the bill cannot, therefore, be supported, it is not necessary that a foundation shall be laid by any averment in the answer of the defendants. If the case, as it appears at the hearing, is liable to the objection by reason of the laches of the complainants, the court will, upon that ground, be passive and refuse relief. Every case is governed chiefly by its own circumstances. Sometimes the analogy of the statute of limitations is applied; sometimes a longer period than that prescribed by the statute is required; in some cases a shorter time is sufficient; and sometimes the rule is applied where there is no statutable bar. It is competent for the court to apply the inherent principles of its own system of jurisprudence, and to decide accordingly."

In the instant case the plaintiff's acquiescence appears to have been absolute from 1892 to 1905, with the exception that he commenced a suit in June, 1893, to restrain the treasurer of Long Island City (a) from receiving certificates from property owners, when redeeming their properties from the assessment sales; and (b) from marking upon the books, as paid, any assessment where the property was sold for less than the amount of the assessment. He apparently never did anything more with the 1893 suit than to begin it. After 1905 there were negotiations with the city, not upon a claim of right, but of grace. Under the circumstances, the plaintiff has not acted with reasonable diligence. And it is a fundamental principle that nothing will call forth the aid of equity but conscience, good faith, and reasonable diligence. If during this period there had been persistent and immediate litigation, which had failed because of some misapprehension as to the remedy available, and upon the failure this suit had been commenced, there would have been some ground for the claim that the laches at least were excusable. As it is, there is none.

For the reasons stated, it is the judgment of this court that the bill was properly dismissed.

Decree affirmed.

HOUGH, Circuit Judge, concurs, on the ground that plaintiff's claim is stale.