## PACIFIC ELECTRIC RAILWAY COMPANY v. LOS ANGELES.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

No. 175. Argued March 7, 1904.—Decided April 11, 1904.

The jurisdiction of the Circuit Court is established when it is shown that complainant had, or claimed to have a contract with a State or municipality which the latter had attempted to impair, and so long as the claim is apparently made in good faith and is not frivolous, the case can be heard and decided on the merits.

Whether presented on motion to dismiss or on demurrer the question of jurisdiction depends primarily on the allegations of the bill and not upon the facts as they may subsequently turn out.

Under the act of California of March 11, 1901, a street railway franchise can only be granted in case of failure of the successful bidder to comply with the provisions of the act as to payment within the prescribed period to the next highest bidder at the original competitive opening of bids, and an ordinance attempting to grant the franchise to another is void and the grantee acquires no rights thereunder, nor is such an ordinance a contract within the meaning of the impairment of contract clause of the Federal Constitution.

THIS is an appeal directly from the Circuit Court. The appellant asserts rights under the Constitution of the United States, in that a contract alleged to exist between it and the council of the city of Los Angeles, granting appellant a franchise under the statute hereinafter mentioned, was impaired by the action of the council. Also that the property of appellant was taken without due process of law.

By an act of the legislature of the State of California, passed
March 11, 1901, (Statutes of California, Extra Session Thirty-
third Legislature, 1900, p. 265,) it is provided that every
franchise or privilege to operate street railroads upon the
public streets or highways, shall not be granted by the re-
spective governing bodies of any city and county, city or
town, except upon certain conditions, to wit, the applicant
for the franchise must file with "the governing or legislative
body" any application, and thereupon said body may, in its
discretion, if the application be accompanied by a petition
signed by the owners of three-fourths of the frontage of the
real property fronting along and upon the route of the fran-
chise applied for, advertise the fact of the application and that
it (the governing body) proposes to grant the same. The
advertisement must be in some newspaper published in the
municipality wherein the franchise is to be exercised, and must
state that bids will be received for such franchise, and that it
will be awarded to the highest bidder. The advertisement
must state a number of other matters, but as no point is made
upon them they are omitted.

In pursuance of the statute appellant made application to
the council of the city of Los Angeles for an electric street rail-
road franchise. The application was referred to the board of
public works, which board recommended the franchise be
offered for sale. The report was adopted by the council and
the franchise was offered for sale, and notice thereof was given
as required by the statute. The notice given was very full and
circumstantial, but its contents are immaterial to the views we
take of the case.

Bids were received by the council on February 10, 1902.
Appellant bid $25,000; W. S. Hook, who, it is alleged, was
president of the Los Angeles Traction Company, bid $37,500;
E. A. Davis, one of the appellees, bid $139,000, and E. Murray
bid $415,000. There were no other bids.

Section 5 of the act of 1901 provides that at the time of
opening of the bids any responsible firm or corporation present

or represented may bid for the franchise or privilege a sum not
less than ten per cent above the highest sealed bid therefor,
and said bid so made may be raised ten per cent by any re-
sponsible bidder present, and said franchise or privilege finally
be struck off, sold and granted by said governing body to the
highest bidder therefor, in gold coin of the United States, who
shall deposit with the "governing body," or such person as it
shall direct, the amount bid within twenty-four hours there-
after. In case of failure to do so "then the said franchise or
privilege shall be granted *to the next highest bidder* therefor."

No person raising the bid of E. Murray, in accordance with
section five, his bid was accepted, and it was ordered that said
franchise be struck off and sold to said Murray, and the city
treasurer was ordered and directed to receive the money there-
for. It was further ordered that the period of twenty-four
hours within which he was allowed to pay for the franchise
should expire at 3.15 P. M. on February 11, 1902.

The bids of Hook, Davis and Murray were all made on behalf
of the Los Angeles Traction Company and for its benefit, and
with the fraudulent intent of preventing competition and
further bidding when the bids should be open, well knowing
that the franchise was not worth the sum of $415,000, and
that no advance on the same was to be made. And it is
alleged that Murray has no financial standing, never intended
to pay his bid, and did not pay the same or offer to pay the
same within the time allowed, and never appeared again before
the council.

On February 11 the traction company and Davis and
Hook appeared before the council, and in pursuance of their
fraudulent scheme claimed that the council had no author-
ity or power to do any other thing than to accept the bid
of Davis for $139,000, and demanded that the said franchise
be awarded to him. Such proceedings were had that the
council declared the bid of Murray to be fraudulent and void,
and the matter of the sale of the franchise was again taken up.
Appellant thereupon bid the sum of $152,000, and presented

with its bid a certificate of deposit on one of the banks in the city, drawn in the name of the city for said sum. Bids over and above said bid were called for by the council, but none was received, and the franchise was ordered to be sold and struck off to appellant. The treasurer was also directed to receive the purchase money, which was paid by appellant in United States gold coin, and it was accepted by the treasurer and the council. Appellant executed a bond in the sum of $25,000 as required by the statute; and the franchise was thereupon struck off, sold and granted to appellant. Subsequently the council passed an ordinance granting the said franchise to appellant, and presented the same to the mayor of the city, who returned the same to the council without his signature or approval, and with his objections to the same. On February 21 the question came up before the council for the passage of the ordinance, notwithstanding the veto of the mayor. The ordinance was not passed, but the council passed a resolution pretending and purporting to order any and all bids to be rejected, and ordered the treasurer of the city to refund to appellant the money paid and the clerk to return the bond executed and filed by appellant—all of which was done by the council under the pretense that the approval of the mayor to the ordinance passed, as above stated, was necessary to give it validity or to make effectual the grant made by the city of the franchise to appellant.

It is alleged that the council of the city, under the statute of the State, had no discretion as to the bid of appellant, but were, on the contrary, by the operation of said statute, ordered to strike off, sell and grant the franchise to appellant and no ordinance was necessary to perfect the grant, and the mayor was not authorized to perform any function in, about or concerning said franchise, and his veto was wholly unfounded; and the title of the appellant became fully vested under the statute, and there was no power in the mayor or the council, or in both, to in any manner affect the rights which had accrued to appellant by virtue of its franchise.

That appellant had become vested with the title to the franchise, and the orders and resolution of the council, pretending to reconsider the order granting the franchise as above stated and readvertising the application, were made without any authority, and were intended to deprive appellant of its said property without due process of law, in violation of the provision of the Constitution of the United States prohibiting any State from depriving any person of life, liberty or property without due process of law.

That under the statute, notice of sale and order granting the franchise appellant was required to commence work for the construction of the road within four months from February 11, 1902, and complete the same within three years from that date. That appellant was and is desirous of commencing such construction, but on February 26, 1902, the council passed an order instructing the mayor, the street superintendent and the chief of police to stop and prevent any attempt appellant might make to construct said road upon any of the streets with all the force at their command, and said officers, acting under such instructions, will undertake by violence to prevent appellant from constructing said road or exercising any rights under its franchise, or for any enjoyment of its property so acquired unless prevented by the court (Circuit Court).

That if the city should sell said franchise, rights and privileges again it will aid the purchaser, with the police force of the city, to take possession of the city property, rights and franchises, and construct a road over and along said route, and to oust and exclude appellant therefrom, and appellant will be compelled to resort to a multiplicity of suits to protect and defend its rights, privileges and franchise purchased by it, and its right to exercise and enjoy the same, and appellant will suffer great and irreparable damage, which cannot be compensated in money.

The relief prayed is that appellant be declared the owner in fee simple of the rights and franchise described; that the orders

of the council, reconsidering the order selling and granting the same, and all of the proceedings of the council subsequent thereto, be rescinded and vacated, and the appellees be restrained from preventing appellant from constructing the road and exercising the rights, privileges and franchise granted.

The city of Los Angeles and the appellees composing its council demurred to the bill. The other appellees also demurred, and the grounds of demurrer, were among others, that the court had no jurisdiction of the subject matter of the suit and the bill was without equity. The Circuit Court overruled the demurrers on the first ground and sustained them on the second. 118 Fed. Rep. 746.

*Mr. J. S. Chapman,* with whom *Messrs. Hunsaker & Britt, Messrs. Works & Lee* and *Messrs. Dunn & Crutcher* were on the brief, for appellant.

*Mr. W. B. Mathews,* with whom *Mr. Jonathan R. Scott* was on the brief, for appellees.

MR. JUSTICE MCKENNA, after stating the case, delivered the opinion of the court.

1. The jurisdictional question first demands consideration. It will be observed that rights under the Fourteenth Amendment of the Constitution of the United States were explicitly asserted. Besides, the Circuit Court treated the bill also as presenting for consideration rights under the contract clause of the Constitution and entertained jurisdiction of the case on the authority of *Riverside &c. Ry.* v. *Riverside,* 118 Fed. Rep. 736.

In *City Railway Co.* v. *Citizens' Railroad Co.,* 166 U. S. 557, the railroad company occupied certain streets of the city of Indianapolis under ordinances of the city. Subsequently the city, in pursuance of an act of the General Assembly of the State, gave the City Railway permission to lay its track on some of the same streets which were occupied by the railroad company. The latter brought suit in the Circuit Court of the

United States for the District of Indiana against the railway company, to enjoin it from availing itself of the privilege attempted to be granted. The court granted the relief prayed for and the case was brought here directly. A question of the jurisdiction of the Circuit Court was raised, and replying to it we said: "All that is necessary to establish the jurisdiction of the court is to show that the complainant had, or claimed in good faith to have, a contract with the city, which the latter had attempted to impair." And it was further observed whether the contract was or was not impaired could not be passed upon "on the motion to dismiss so long as the complainant claimed in its bill that it had that effect, and such claim was apparently made in good faith, and was not a frivolous one." This view was repeated in *Illinois Central Railroad Co.* v. *Adams*, 180 U. S. 28.

In those cases the question of jurisdiction was presented on motion to dismiss. In the case at bar it is presented by demurrer, but, however presented, jurisdiction depends primarily upon the allegations of the bill, not upon the facts as they may subsequently turn out, *City Railway Co.* v. *Citizens' R'd Co.*, *supra*, nor upon the actual sufficiency, in the opinion of the court, of the facts alleged to justify the relief prayed for. We do not mean, however, that a mere claim in words is sufficient—a substantial controversy must be presented. This requirement is satisfied in the case at bar. The Circuit Court, therefore, had jurisdiction, and the case was properly brought here from that court, since it involves the construction and application of the Constitution of the United States.

2. The claim of appellant is that the order of the city council of February 11, 1902, granting the franchise to it, appellant, constituted a contract, the obligation of which the subsequent orders of the council impaired, and, further, deprived appellant of its property without due process of law. The question upon which the claim depends is, in our view, a simple one. We need not quote the provision of the statute applicable to the contentions of the appellees, that the notice

given of the sale of the franchise was insufficient, nor need we discuss that contention or the contention that the approval of the mayor of the city under the charter of the city and the constitution of the State was necessary to a grant of franchises. We will assume the contentions are untenable, and we will also assume that all the steps preliminary to the bidding were rightfully taken and that the order of the council striking off and selling to appellant the franchise was sufficient to vest title in appellant if its bid was properly and legally accepted under section 5 of the act of 1891. This narrows the question in the case to the construction of that section.

The notice of an application for a franchise is required to state that sealed bids will be received for the franchise "up to a certain hour and day named therein," (sec. 3,) and also to state that the franchise "will be granted to the person, firm or corporation who shall make the highest cash bid therefor;" and any bid may be raised not less than ten per cent "above the highest sealed bid," and the franchise finally struck off, sold and granted to the "highest bidder." (Sec. 5.) Section 5 also provides that the "successful bidder shall deposit with said governing body, or such person as it may direct, the full amount of his or its bid, within twenty-four hours thereafter; and in case he or it shall fail so to do, then the said franchise or privilege shall be granted to the *next highest* bidder therefor." We italicize the pivotal words. To what do they refer? To bids already made as contended by appellees or to a bid or bids to be made as contended by appellant? More obviously the former. They express the relation between bids in existence— those already made and pending before the council in pursuance of its notice. It is only in comparison with the *next* highest of those that the words have signification.

But this construction, it is said, permits the fraud which the bill alleges was practiced upon the city council. We cannot say the argument is without force, but that fraud might be attempted may have been considered and weighed by the legislature. It may have been thought that in any plan of

competition which could be devised there would be danger of illegal combinations, and that the safeguard against them must be the vigilance of the municipal officers, and, may be, that of competing interests. But be this as it may, the defects of the statute cannot control its plain letter. Obviously to give them such effect would be to amend the statute, not to interpret it. And we think section 5 is plain, and was intended to express as an alternative of a bid not fulfilled the acceptance of one already made, not one to be made. We are fortified in this view by section 7 of the act. That section provides that the grantee of the franchise shall file a bond to fulfill the terms and conditions of such franchise, and also provides that if such bond be not filed "the award of such franchise shall be set aside and the same may be granted to the next lowest bidder, or again offered for sale," in the discretion of the governing body. In other words, when there is to be further competition it is explicitly provided for.

It follows that appellant's bid was not the next highest to that of Murray and the order of the council selling and granting appellant the franchise was void, and the decree of the Circuit Court dismissing the bill is

*Affirmed.*