## NOYES v. PARSONS et al.

(Circuit Court of Appeals, Ninth Circuit.   September 4, 1917.)

No. 2838.

1. COURTS ⬤═►299—JURISDICTION—FEDERAL COURTS—ALLEGATIONS AND PROOF.
   In an action under Sherman Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209, for the treble damages allowed by section 7 (Comp. St. 1916, § 8829) for violation of section 3 (section 8822), declaring that every contract or combination in restraint of trade or commerce in any territory of the United States shall be unlawful, the federal court is without jurisdiction other than to determine the question whether one of the classes of cases over which it has jurisdiction is involved, unless the complaint avers and it is proven that plaintiff was injured by reason of a contract or combination in restraint of trade, in violation of the act.

2. MONOPOLIES ⬤═►30—ACTIONS—COMPLAINT—SUFFICIENCY.
   The complaint of the receiver of an insolvent corporation, seeking to recover the treble damages provided for by section 7 for violation of Sherman Anti-Trust Act, § 3, prohibiting agreements and combinations in restraint of trade, alleged that the corporation of which plaintiff was receiver, and which had been engaged in the banking business, entered into agreements with two other banking companies, whereby the three formed a combination to control the banking business at a particular point, that the corporation of which he was receiver and another of the three acquired the stock of the third banking company, and that ultimately the corporation of which plaintiff was receiver was absorbed by the second corporation. The complaint alleged as elements of damage the amount paid by the second corporation to the stockholders of the corporation of which he was receiver, which was in excess of the actual value of the stock, on the theory that the corporation was deprived of some right, and as other items of damage alleged that the corporation ultimately became insolvent to a given amount. *Held*, that the complaint stated no cause of action; it appearing that the corporation of which plaintiff was receiver became insolvent through mismanagement, and despite the combination in restraint of trade in violation of the act, which gave it advantage.

3. COURTS ⬤═►299—FEDERAL COURTS—JURISDICTION.
   The jurisdiction of the federal court over an action for damages for violation of the Sherman Anti-Trust Act must appear by distinct averments according to the rules of good pleading, and cannot be left to inference.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Action by F. G. Noyes, as receiver of the Washington-Alaska Bank, a corporation organized under the laws of the state of Washington, against W. H. Parsons and others. There was a judgment for defendants, and plaintiff brings error. Affirmed.

Tort action to recover compensatory and exemplary damages, under section 7 of the act of Congress of July 2, 1890 (Sherman Anti-Trust Act), for an unlawful combination and conspiracy in restraint of trade in violation of section 3 of the same act. Defendants demur. Demurrer sustained, and complaint dismissed. Plaintiff alleges error.

The complaint in the present action was filed on January 19, 1916, in the United States District Court for the Western District of Washington, North-

⬤═►For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
245 F.—44

ern Division, by F. G. Noyes, as receiver of the Washington-Alaska Bank, a Washington corporation, against the stockholders and directors of said Washington-Alaska Bank. It is alleged: That the Washington-Alaska Bank is a corporation organized under the laws of the state of Washington for the purpose of carrying on a general banking business in Alaska. (This corporation will hereafter be referred to as the Washington Company.) That the First National Bank of Fairbanks is a corporation organized under the national banking laws of the United States, and ever since the time of its organization has conducted a general commercial banking business at the town of Fairbanks in the territory of Alaska. That from October, 1905, until March, 1908, E. T. Barnette, James W. Hill, and R. C. Wood, as copartners under the firm name and style of the Fairbanks Banking Company, conducted a general banking business in the said town of Fairbanks. That on or about January 21, 1908, the Fairbanks Banking Company was organized as a corporation, under the laws of the state of Nevada, for the purpose of acquiring, taking over, and conducting the business of said copartnership, and that said corporation thereafter conducted the said business. (This corporation will hereafter be referred to as the Nevada Company.) That each of said companies conducted a general banking business in the town of Fairbanks and the district surrounding. That there was no other bank or banker with 350 miles of Fairbanks, or within six days' travel by regular route therefrom. That many millions of dollars of gold was taken from the placer mines of said district annually, and that the said three banks provided the only avenues through which the said gold could reach the markets therefor. That the said banks derived a large revenue from the handling of said gold, and in the issuance of domestic and foreign exchange, and from usual banking business. "That on or about the year 1905, at the said town of Fairbanks, in the said territory of Alaska, the directors of said the Washington Company, the said First National Bank of Fairbanks, and the Nevada Company, by and through their respective boards of directors, officers, and managers, secretly, unlawfully, and in violation of section 3 of the act of Congress of July 2, 1890 (commonly known and called the 'Sherman Anti-Trust Act'), agreed, combined, and conspired together to restrain trade and commerce in the territory of Alaska, and between said territory and the several states of the Union, and between said territory and foreign nations, in this, to wit: The board of directors, managers, and officers of the said three banks then and there secretly agreed together and with one another to conduct their said three several banking businesses noncompetitively, and, in order to effect and secure such noncompetitive conduct thereof, the board of directors of each of said three banks, by its managing officer, then and there entered into an agreement" providing the amount of exchange, charges, commission, interest, discount, etc., to be collected upon the various transactions comprising the bulk of the banking business of said banks, and also providing for advances of currency by any of said banks upon the request of another of said banks. That the agreement, combination, and conspiracy entered into on the date set forth in the above-written agreement (June 6, 1905), was continued up to and including January 4, 1911. That when the Nevada Company was organized as a corporation and commenced business under the name of the Fairbanks Banking Company, it also entered into and continued in the said unlawful agreement, combination, and conspiracy in the place of the copartnership theretofore carrying on business under the firm name and style of the Fairbanks Banking Company. That during all of said time the said schedule of rates and charges set forth in said agreement was unreasonably high and grossly excessive, but was, notwithstanding, substantially observed and enforced by said directors of the said three banks, and that during this period of time the said banks transacted a very large business along the various lines mentioned, all of which was done in pursuance of and in compliance with the said agreement. That, for the purpose of insuring the good faith of the parties to carry out such agreement, each party deposited a certified check for $5,000 as a penalty in the forfeit of such sum by any party violating said agreement. That on May 7, 1909, in pursuance of the said combination and conspiracy, the Nevada

Company and the directors, officers, and stockholders of the Washington Company, having become suspicious of the loyalty of the First National Bank of Fairbanks to said agreement, pretended to purchase all of the capital stock of the said First National Bank; the Nevada Company paying $62,500 for one-half thereof, and the directors of the Washington Company paying out of the funds of the Washington Company the sum of $62,500 for the remaining one-half thereof. That, having obtained the absolute control of the First National Bank of Fairbanks, and in pursuance of the combination and conspiracy mentioned above, they compelled it and its board of directors and officers to enter into another agreement, similar to that heretofore set forth, which was executed by the three banks on May 10, 1909. That upon the same day another agreement was entered into between the Nevada Company and the Washington Company, providing for a division of the earnings made by each of them with the other, and further providing for the sharing of certain business between the two companies, which agreement is alleged to have been in pursuance of the said conspiracy, and illegal. That the directors, stockholders, and officers of the Washington Company and the Nevada Company, in order to effect the absolute concentration and to obtain the absolute control of the banking business in the town of Fairbanks, the Tanana valley, and the country adjacent thereto, and in order to make still more secure and to render permanent the unlawful restraint of trade and commerce, agreed together on September 16, 1909, that the stockholders and directors of the Washington Company should sell to the Nevada Company all of the capital stock and all the assets of the Washington Company, in consideration of the sum of $250,000, and in accordance with said agreement a resolution was passed by the board of directors of the Nevada Company for said sum, and the holders of all of the stock of the said Washington Company pretended to sell, transfer, and assign unto the Nevada Company all of the stock of the Washington Company, and the said sum of $250,000 was paid over to said stockholders by the Nevada Company. That in pursuance of said unlawful agreement, combination, and conspiracy in restraint of trade and commerce the said stockholders of the Washington Company agreed not to engage in the banking business in the city of Fairbanks or adjacent creeks in the territory of Alaska for the period of five years.

It was further alleged: "That on said 16th day of September, 1909, and for a long time prior thereto, the said Nevada Company was insolvent, its liabilities on said 16th day of September, 1909, exceeding its assets in the amount of five hundred thirty-five thousand ($535,000) dollars, and that said sum of two hundred fifty thousand ($250,000) dollars was paid to the defendants herein out of the moneys and funds of the depositors and creditors of said Nevada Company, all of which the defendants herein, and each of them, then and there well knew." That while the Washington Company was solvent on the 16th day of September, 1909, and had sufficient assets to pay and satisfy in full all the demands of its creditors, its capital stock did not possess a value in excess of the sum of $110,000. That the difference of $140,000 between the true value of such stock and the $250,000 paid therefor was declared by the defendants to be a bonus, but in truth and in fact was an advance of the future unlawful profits, and the share of the defendants therein, to be made by the Nevada Company for the benefit of all parties to said agreement out of the unlawful agreement and combination in restraint of trade, and was paid by said Nevada Company out of the funds of its depositors to the directors and stockholders of said Washington Company as such directors' and stockholders' share of such unlawful profits in advance, as defendants herein, and each of them, then and there well knew. That on January 22, 1910, the directors of the Washington Company surrendered, by instrument in writing, their offices as directors of the Washington Company to a board of directors designated, selected, and controlled by the Nevada Company, and thereafter the latter conducted and operated the business of the Washington Company until the 1st day of October, 1910, and thereafter and at all times down to the 4th day of January, 1911, as a pretended consolidated corporation composed of the two corporations, namely, the Washington Company and the Nevada Company, solely with a view to the welfare, advantage, and benefit

of the said Nevada Company, and without any regard whatsoever for the rights or welfare of the said Washington Company, or its depositors and creditors, and, with the knowledge and consent of the defendants herein, dissipated, wasted, and converted the assets of the Washington Company, and have never repaid or restored the same. That on October 1, 1910, the officers and directors so selected and designated by the Nevada Company as the officers and directors of the Washington Company, with the knowledge and consent of the defendants herein, falsely and fraudulently pretended to consolidate the said two banks, and caused a physical commingling of their movable property, effects, and assets, and the occupation of the same office by said two banks, and the conduct of the business of the two banks at all times thereafter as the business apparently of one consolidated or merged corporation. That on October 8, 1910, the Nevada Company, to the knowledge and with the consent of the defendants herein, changed the name to the Washington-Alaska Bank for the purpose of deceiving the depositors and creditors of said Washington Company and the public generally. That on January 4, 1911, the said Nevada Company, so conducting the business of itself and of said Washington Company, closed its doors and ceased to do a banking business. That on January 5, 1911, in a certain suit entitled Tanana Valley Railroad Co. et al. v. Washington-Alaska Bank, No. 1597 in the District Court for the Territory of Alaska, Fourth Judicial Division, said court made an order appointing a receiver for said Nevada Company and its assets; and on the following day a coreceiver was appointed. That these receivers resigned on May 12, 1911, and plaintiff was thereupon appointed receiver of the defendant in said cause, and of all its assets, with like powers to preserve and distribute the same, and has ever since been and now is such receiver. That the creditors and depositors of the Washington Company and of the Nevada Company, and the public generally in said town of Fairbanks and vicinity, and said District Court of the Territory of Alaska, and said receivers and each of them, and their attorneys, did not, prior to March, 1915, know or have notice that the pretended sale of the capital stock of said Washington Company was fraudulent, null, and void, nor that the representations that the Nevada Company and the Washington Company had lawfully consolidated and merged were absolutely false and fraudulent. That, on the contrary, the receivers, relying upon and believing said representations, under orders made in said cause, distributed dividends aggregating 50 cents on the dollar to the creditors and depositors of the Washington Company and the Nevada Company, on the erroneous assumption that those creditors were the creditors of the supposed consolidated and merged corporations. That all of the creditors and depositors of the Nevada Company and of the Washington Company also relied upon and believed said false and fraudulent representations, and had no notice or knowledge of the existence of the combination and conspiracy to restrain trade, or that the said representations and statements and said pretended consolidation were false and fraudulent, except the defendants herein and the Nevada Company, until March, 1915, when plaintiff was advised by counsel, residing in San Francisco, Cal., that the laws of Nevada did not permit of the sale and purchase by a banking corporation organized under the laws of Nevada of the stock of a banking corporation, or of the consolidation of a corporation organized under the laws of Nevada with a corporation organized under the laws of any other state, territory, or country. That said receiver and the creditors and depositors of the Washington Company were then and there for the first time advised by said counsel that the receivers appointed in said cause No. 1597 were not the receivers of the said Washington Company and its assets in Alaska, and that in consequence no receiver had been lawfully appointed for said Washington Company. That in May, 1915, as a result of the information and advice so received, one of the creditors of the Washington Company commenced a suit, No. 2113 in said District Court, against plaintiff, as receiver of the Nevada Company, who was then and there in possession of the assets and books of account of the Washington Company under the erroneous belief and assumption that said Washington Company was lawfully consolidated with said Nevada Company. That thereafter said court made an order apppointing plaintiff the receiver of

said Washington Company and of all of its assets in Alaska, and ever since May, 1915, plaintiff has been such receiver. That on July 27, 1915, the said court made an order of reference in said cause No. 2113, requiring that testimony be taken, an inquiry made, all accounts stated, and all facts disclosed and found, and conclusions of law made thereon. That in pursuance of said order, and a like order in said cause No. 1597, references were had, a full list of the creditors and debtors of the Washington Company was ascertained, and the assets and liabilities of the Washington Company and of the Nevada Company were segregated and ascertained, respectively. That it was found and concluded by the referee that the Washington Company was on January 5, 1911, and at all times thereafter, insolvent, and that said pretended sale of stock and consolidation was unlawful, fraudulent, null and void. And thereafter, on July 24 and 30, 1915, the said District Court made and entered decrees in said causes numbered 1597 and 2113, respectively, approving and adopting said findings and conclusions of the referee. That on September 8, 1915, the superior court of the state of Washington appointed plaintiff receiver of the Washington Company and of all its assets within the state. That both the Washington Company and the Nevada Company are insolvent. That by reason of the unlawful acts of the defendants the Washington Company has been injured in the sum of $110,000, being the surplus over and above its liabilities to creditors, excepting stockholders, which surplus said Washington Company owned and possessed on the 16th day of September, 1909; in the sum of $5,000, being the loss of the use of said $62,500 paid by said defendants for one-half of the stock of the First National Bank of Fairbanks; and in the sum of $512,557.17, being the amount necessary to liquidate the obligations of said Washington Company to its depositors. Wherefore plaintiff prayed judgment against defendants in the sum of $1,882,671.51, together with the sum of $50,000 as attorney's fees, and costs.

Defendants demurred, and the court sustained their demurrer upon two grounds: (1) That the complaint does not state a cause of action, as the plaintiff as receiver represents the corporation, and the corporation, being a party to the illegal combination, cannot sue under the Sherman Act for such damages as it may have suffered by reason of the combination to which it was a party; and (2) that the action was not commenced within the time limited by law. Plaintiff alleges error.

Hughes, McMicken, Dovell & Ramsey and Otto B. Rupp, all of Seattle, Wash., Roy V. Nye, of Monrovia, Cal., and De Journel & De Journel, of San Francisco, Cal., for plaintiff in error.

Clise & Poe and Peters & Powell, all of Seattle, Wash., for defendants in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] This is an action at law, brought under section 7 of the act known as the "Sherman Anti-Trust Act" (An act to protect trade and commerce against unlawful restraint and monopolies, approved July 2, 1890, 26 Stat. 209). The act provides, among other things:

"Sec. 3. Every contract, combination in form of trust or otherwise, or conspiracy in restraint of trade or commerce, in any territory of the United States, * * * is hereby declared illegal. * * *"

"Sec. 7. Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any Circuit Court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover threefold the damages by him sustained and the costs of suit, including a reasonable attorney's fee." Comp. St. 1916, §§ 8822, 8829.

The things forbidden and declared to be unlawful by the clause of section 3 of the act quoted above are "every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce, in any territory of the United States," and any person who shall be injured in his business or property by any person or corporation by reason of any such unlawful act may, under section 7, sue therefor in a federal court and recover threefold the damages sustained by him, and the costs of suit, including a reasonable attorney's fee. The jurisdiction of the court and the province of the jury in such a case is to inquire whether the complainant has been injured in his business and property by reason of any such unlawful act. If it appears from the complaint, and is proven, that the plaintiff has been so injured, the court has jurisdiction, and upon the verdict of a jury is required to award the damages provided in the act. But if, on the other hand, he has not been so injured, or if he has been injured, but not by reason of anything forbidden or declared to be unlawful by the act, he cannot recover in the action. This statement of what must always seem to be an obvious rule of procedure appears to be necessary in this case, in order to direct attention to the question whether the matters alleged in the complaint really and substantially involve a dispute or controversy within the jurisdiction of the court.

In Minnesota v. Northern Securities Co., 194 U. S. 48, 65, 24 Sup. Ct. 598, 48 L. Ed. 870, the Supreme Court of the United States, referring to an allegation in the complaint in that case that the combination and consolidation between the Great Northern and Northern Pacific Railway Companies and their control of their affairs and operations by the Northern Securities Company were in violation of this Anti-Trust Act, said:

"An allegation in a complaint filed in a Circuit Court of the United States may, indeed, in a sense confer jurisdiction to determine whether the case is of the class of which the court may properly take cognizance for purposes of a final decree on the merits. Newburyport Water Co. v. Newburyport, 193 U. S. 561, 24 Sup. Ct. 553, 48 L. Ed. 795, and Pacific Electric Ry. Co. v. Los Angeles, 194 U. S. 112, 24 Sup. Ct. 586, 48 L. Ed. 896, decided at present term. But if, notwithstanding such an allegation, the court finds, at any time, that the case does not really and substantially involve a dispute or controversy within its jurisdiction, then, by the express command of the act of 1875, its duty is to proceed no further"—citing section 5 of the act of 1875 (Act March 3, 1875, c. 137, 18 Stat. 472 [Comp. St. 1916, § 1019]).

And in Hull v. Burr, 234 U. S. 712, 720, 34 Sup. Ct. 892, 58 L. Ed. 1557, the same court, referring to the jurisdiction of the federal court under the laws of the United States, said:

"The rule is firmly established that a suit does not so arise unless it really and substantially involves a dispute or controversy repecting the validity, construction, or effect of some law of the United States, upon the determination of which the result depends. And this must appear, not by mere inference, but by distinct averments according to the rules of good pleading; not that matters of law must be pleaded as such, but that the essential facts averred must show, not as a matter of mere inference or argument, but clearly and distinctly, that the suit arises under some federal law. Hanford v. Davies, 163 U. S. 273, 279, 16 Sup. Ct. 1051, 41 L. Ed. 157; Mountain View Mining & Milling Co. v. McFadden, 180 U. S. 533, 535, 21 Sup. Ct. 488, 45 L. Ed. 656; Defiance Water Co. v. Defiance, 191 U. S. 184, 191, 24 Sup. Ct. 63, 48 L. Ed.

140; Arbuckle v. Blackburn, 191 U. S. 405, 413, 24 Sup. Ct. 148, 48 L. Ed. 239; Bankers Casualty Co. v. Minneapolis, etc., Ry. Co., 192 U. S. 371, 383, 24 Sup. Ct. 325, 48 L. Ed. 484; Shulthis v. McDougal, 225 U. S. 561, 569, 32 Sup. Ct. 704, 56 L. Ed. 1205."

[2] It may be conceded that the agreement of June 6, 1905, between the Fairbanks Banking Company, the predecessor of the Nevada Company, the Washington Company, and the First National Bank of Fairbanks, agreeing to conduct their said three several banking businesses noncompetitively, and fixing the rates to be charged by the three banks, respectively, for exchange upon drafts, telegraphic transfers, the handling of gold dust, transportation and insurance, collection rates, interest on loans, etc., and fixing a penalty for a departure from such rates by either of the banks, was an unlawful combination and in violation of the Anti-Trust Act. It may also be conceded that the agreement of May 10, 1909, upon the same subject and to the same effect, was unlawful, and in violation of the Anti-Trust Act, and that the consolidation of the three banks was, under the circumstances, open to judicial inquiry in a proper suit. But it is not alleged in the complaint that the Washington Company suffered any injury by reason of these unlawful agreements. The statement and explanation of the plaintiff in error is that the allegations of the complaint respecting these agreements had no such purpose; that they were intended only to serve as matters of inducement, inserted for the purpose of exhibiting the origin and development of the banking business at Fairbanks and the status thereof existing, and the purposes actuating the defendants when the conspiracy and combination of 1909 was entered upon by the defendants and the Nevada Company. We may then dismiss these allegations from further consideration as charging that the Washington Company suffered injuries by reason of these violations of the Anti-Trust Act.

We come, now, to the cause of action upon which a recovery of damages is sought in this case. It is charged that on September 16, 1909, while the directors, stockholders, and officers of the Washington Company were conducting and carrying on a banking business in pursuance of the unlawful combination and conspiracy in restraint of trade and commerce mentioned, in order to effect the absolute concentration and to obtain the absolute control of the banking business in the town of Fairbanks, the Tanana valley, and the country adjacent thereto, and in order to make still more secure and to render permanent the said unlawful restraint of trade and commerce, they sold to the Nevada Company all the capital stock and all the assets of the Washington Company, and the Nevada Company purchased such capital stock and assets, which included one-half of the capital stock of the First National Bank of Fairbanks; that at that time the Nevada Company was insolvent, which the defendants knew; that its liabilities exceeded its assets in the amount of $535,000. It is further alleged that on January 22, 1910, the directors and stockholders of the Washington Company surrendered their offices as directors of that company to a board of directors selected and controlled by the Nevada Company, and on the 4th day of January, 1911, the Nevada Company, conducting the

business of itself and of the Washington Company, closed its doors and ceased to do a banking business.

The injuries to the Washington Company resulting from these acts of the defendants as stockholders of that company are specifically charged as follows: That on May 7, 1909, the Nevada Company and the directors, officers, and stockholders of the Washington Company purchased all of the capital stock of the First National Bank of Fairbanks for the sum of $125,000, each corporation taking one-half of the stock, or $62,500 each. It is alleged in the complaint that there was a loss of the use of this money, which loss amounted to $5,000. This charge the plaintiff in error states was inadvertently made, and should be rejected as surplusage. The next charge is that on the 16th day of September, 1909, the defendants, as stockholders of the Washington Company, sold their stock to the Nevada corporation for $250,000. It is alleged that at that date the capital stock of the Washington corporation was worth only $140,000. The difference between the actual value of the stock ($140,000) and the sum for which the defendants sold the stock to the Nevada corporation ($250,000) is the sum of $110,000. This difference of $110,000, it is claimed, was an injury to the Washington Company caused by the defendants as officers and stockholders of the company. The next charge is that the Washington Company was insolvent on January 4, 1911, and was indebted to its creditors on that day for principal in the sum of $378,977.72, and for interest on that sum from January 4, 1911, to the 1st day of June, 1915, at 8 per cent. per annum, the sum of $133,579.45, or a total of $512,557.17. These four items make a sum total of $627,557.17. Threefold damages—that it to say, three times $627,557.17—amount to $1,882,671.51. From this sum must, however, be deducted threefold the damages of $5,000 claimed in the complaint for the loss of the use of the money paid for one-half of the stock of the First National Bank of Fairbanks, which claim this court is asked to reject as surplusage. This deduction leaves the claim of damages amounting to $1,867,671.51, which it is contended the plaintiff, as receiver of the Washington Company, is entitled to recover of the defendants.

We are of opinion that this statement of the case and the object of the suit as set forth in the complaint is sufficient to show that the case does not really and substantially involve a dispute or controversy respecting the validity, construction, or effect of the Anti-Trust Act, upon the determination of which the result depends. The bank did not fail because of its consolidation with the other banks, or because of its noncompetitive agreements with such banks. It failed, notwithstanding the advantage it had in the grossly exorbitant rates it was able to exact from its customers under the noncompetitive agreements. That it failed from mismanagement is clearly disclosed by the complaint, and the cause of action as stated is in all essential features a suit on behalf of creditors for damages resulting from such mismanagement, and if a recovery could be had in this suit it would be for their benefit.

[3] The argument that the injuries suffered by the Washington Company grew out of the unlawful combination of the defendants in restraint of trade and commerce is not convincing, and the jurisdiction

of a federal court, limited as it is by law, cannot be made to depend upon argument. The jurisdiction must not be a matter of mere inference, but must appear by distinct averments according to the rules of good pleading. Minnesota v. Northern Securities Co., 194 U. S. 48, 65, 24 Sup. Ct. 598, 48 L. Ed. 870, and Hull v. Burr, 234 U. S. 712, 720, 34 Sup. Ct. 892, 58 L. Ed. 1557. This conclusion renders it unnecessary to discuss the question whether the receiver of the Washington Company can maintain this suit against its stockholders, or the other question whether the cause of action is barred by the statute of limitations.

The judgment of the District Court is affirmed.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes