## AMERICAN R. CO. OF PORTO RICO v. SOUTH PORTO RICO SUGAR CO.

(Circuit Court of Appeals, First Circuit. November 24, 1923.)

No. 1631.

1. **Courts ⬥⟶329—Allegation as to jurisdictional amount in suit for injunction held sufficient.**

A complaint in a suit for an injunction, alleging that defendant railroad company was threatening to cut off side tracks owned by complainant, a sugar company, and necessary for the economical removal of cane valued at hundreds of thousands of dollars, and that the value of complainant's contract with defendant relating to these side tracks was many times $3,000, *held* a sufficient allegation of the jurisdictional amount.

2. **Courts ⬥⟶329—Jurisdictional amount determined by claim of complaint made in good faith.**

Where a claim is made in good faith, and it does not appear on the face of the complaint that it is not legally impossible for the jurisdictional amount to be involved, an allegation as to the jurisdictional amount controls.

3. **Courts ⬥⟶328(1)—Good defense held not to affect amount in dispute.**

That defendant has a good defense to the action does not affect the question as to what is the amount in dispute.

4. **Injunction ⬥⟶118(4)—Complaint held to show absence of adequate remedy and to state cause of action for equitable relief.**

A complaint in suit for injunction, alleging that defendant railroad threatened to cut off side tracks owned by complainant, a sugar company, unless complainant paid an alleged illegal greasing charge, *held* to show absence of adequate remedy at law, and to state a cause of action for equitable relief.

---

⬥⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. **Public service commissions** ⟨⟨⟩19½, New, vol. 12A Key-No. Series—Shipper can enforce his right against carrier, imposing illegal charges, without preliminary decision of Public Service Commission.

As against a carrier, imposing on shipper illegal greasing charges, and threatening to cut off side tracks unless they are paid, a shipper may enforce his rights in any court having jurisdiction of the matter, without a preliminary decision that they are illegal by the Public Service Commission of Porto Rico.

6. **Carriers** ⟨⟨⟩12(1)—Greasing charges, not included in filed schedules, held illegal.

Greasing charges, imposed by carrier on shipper for delivering and receiving cars at private side tracks, not included in any tariff of rates filed with the Public Service Commission, are illegal, in view of Laws Porto Rico 1917, No. 70, §§ 3, 4, 24, 95.

7. **Public service commissions** ⟨⟨⟩19½, New, vol. 12A Key-No. Series—Statute held not to prevent equitable relief against carrier, threatening to tear up private side tracks without previous decision by commission.

Where a carrier threatened to tear up complainant's private switches and side tracks, and refused to receive and deliver cars there, unless complainant paid illegal greasing charges, not included in any tariff of rates filed with the Public Service Commission, Laws Porto Rico 1917, No. 70, § 28, prohibiting an action to recover because of wrongful collection of an alleged excessive rate, in the absence of a previous decision of the commission that the rate was excessive, does not prevent equitable relief.

Appeal from the District Court of the United States for the District of Porto Rico; Arthur F. Odlin, Judge.

Suit by the South Porto Rico Sugar Company against the American Railroad Company of Porto Rico. From an interlocutory decree granting a temporary injunction, defendant appeals. Affirmed.

Francis H. Dexter, of San Juan, Porto Rico, for appellant.

Francis E. Neagle, of New York City (Rounds, Hatch, Dillingham & Debevoise, of New York City, and O. B. Frazer and Nelson Gammans, both of San Juan, Porto Rico, on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from an interlocutory decree of the United States District Court for Porto Rico granting a temporary injunction—

"in accordance with the prayer of the bill of complaint, but to continue in force only until such time as the Public Service Commission of Porto Rico shall include in its rates of tariffs a charge for the service now being rendered by the railroad company to the sugar company, there being no rate for such service at present."

The prayer of the bill was that:

"The defendant, its agents and employees, and all persons acting by, through or under its authority, be enjoined pendente lite from cutting from defendant's main lines the switches and sidings referred to herein, and from refusing to deliver cars to or receive cars from said switches and sidings, and from otherwise interfering with complainant or violating its contracts with complainant as a means of coercing complainant to pay said alleged greasing charges."

The complainant in the court below, in support of its application for a temporary injunction, filed the affidavit of its vice president and gen-

---

⟨⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

eral manager in verification of the facts set forth in the bill of complaint, and the defendant, in resisting the application, filed the affidavit of its manager to the truth of the facts set forth in a paper styled an answer which it filed to the bill of complaint. From these papers it appears that the complainant is a Porto Rican corporation engaged in operating a sugar mill in Porto Rico; that the defendant (the appellant) is a New York corporation engaged in operating a public service railroad in Porto Rico; that the complainant, in connection with the operation of its sugar mill, purchases sugar cane from independent growers called colonos, whose lands are situated in different localities and at considerable distances from said mill; that, in order to transport the sugar cane purchased from these independent growers, it had caused to be constructed and owned some 60 switches adjacent the defendant's line in the vicinity of the independent growers, said switches and sidings being located on land owned or leased' by it. It is admitted that the complainant paid the defendant for constructing the switches and sidings and owned them, but it is denied that in consideration of said payments the defendant agreed to—

"deliver cane cars on the switches and sidings and receive the same therefrom for transportation over its track during the life of said switches and sidings, subject only to regulations provided by law."

It is alleged and admitted that the defendant has threatened and threatens to cut off said switches and sidings and to refuse to deliver cars thereto and receive cars therefrom unless the complainant pays to it greasing charges in the amount of $1,704 for the calendar year 1922 and $852 every six months thereafter in advance (which at the present time amount to over $3,000), and that it has demanded and threatens to demand such charges.

It is further alleged that the greasing charges are not included in any tariff of rates filed by the defendant with the Public Service Commission of Porto Rico and are illegal and void. It is admitted by the defendant that said charges have not been included in any tariff of rates filed by it, and, while it does not specifically deny that such charges are illegal and void, it does so inferentially, for it says that they have been sanctioned and recognized by the Public Service Commission and its predecessor for more than 15 years and—

"are incidental charges made necessary for the granting of special facilities to plaintiff and all other owners of private switches and sidings."

It is alleged that the amount or matter in controversy in this suit exceeds the sum of $3,000, exclusive of interest and costs; that said switches and sidings are necessary for the economical removal of cane from land of the value of hundreds of thousands of dollars, and the value of said contracts with defendant is many times $3,000; that the cutting off of said switches and sidings from defendant's main lines, and the refusal to deliver cars thereto and receive loaded cars therefrom for transportation to complainant's sugar mill, will result in irreparable injury to complainant; that the cost of transportation by cart or otherwise to defendant's nearest public stations would be prohibitive, and make it impossible for complainant to compete with other mill

owners, and that the value of said connecting switches is greatly in excess of the cost of construction or replacement; that said injury cannot be compensated for by money damages, and complainant has no adequate remedy at law. The defendant denies that the amount or matter in controversy exceeds $3,000. It admits that the switches and sidings are necessary for the economical removal of cane from land of the value of hundreds of thousands of dollars, but denies the existence of any contract between the plaintiff and defendant and that such contract has value in excess of $3,000, and says that the service of delivering and receiving cane cars at said switches and sidings is given in response to its general duty as a common carrier, and not by virtue of any contract with the plaintiff or its predecessors in interest. The defendant denies that its act in refusing to deliver and receive cars at the private switches and sidings will result in irreparable injury to the plaintiff which cannot be compensated for in money damages, or that the plaintiff has no adequate remedy at law, and says that it appears from the allegations of the bill of complaint that the charge objected to by plaintiff represents service rendered by defendant to it during the past year, and that the plaintiff has ignored the jurisdiction of the Public Service Commission which it may lawfully exercise in connection with the charge complained of. The defendant also avers that it has for many years received from all other owners of private switches and sidings said greasing charges without complaint from them or the Public Service Commission and its predecessor; that it has failed to charge and collect from the plaintiff and its predecessors in interest such greasing charges, either as a favor extended to them or by inadvertence; that on becoming aware of this the defendant demanded that the complainant pay the same and enter into a written contract regulating the service for the future.

The errors assigned and here relied upon are: (1) That the court erred in entertaining jurisdiction of the cause, because it is apparent from the record that there was and is not involved the sum of $3,000; (2) that the court erred in entertaining jurisdiction and granting a preliminary injunction because it does not appear from the bill of complaint and the record that the complainant has not an adequate remedy at law; and (3) that the court erred in granting a preliminary injunction because, upon the bill of complaint and the record, it appears that the Public Service Commission of Porto Rico had and has exclusive jurisdiction to grant or deny relief to the plaintiff, and that it had not applied to said Commission.

[1-3] The record discloses that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $3,000, and that the District Court, as a federal court, had jurisdiction. It is positively alleged in the complaint that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $3,000. This allegation controls as to the jurisdictional amount, it not appearing on the face of the complaint that it is not legally impossible for that amount to be involved and the claim being made in good faith. Smithers v. Smith, 204 U. S. 632, 642, 27 Sup. Ct. 297, 51 L. Ed. 656; Chesbrough v Northern Trust Co., 252 U. S. 83, 40 Sup. Ct. 237, 64 L. Ed. 470; Pa-

cific Electric Railway Co. v. Los Angeles, 194 U. S. 112, 24 Sup. Ct. 586, 48 L. Ed. 896. Instead of its appearing on the face of the complaint that it is legally impossible for the jurisdictional amount to be involved, it there appears that the switches and sidings are necessary for the economical removal of cane from land of the value of hundreds of thousands of dollars; that the value of the contracts with the defendant for the operation of the switches and sidings is many times $3,000; that the cutting off of said switches and sidings from the defendant's main lines, and the refusal to deliver cars thereto and receive loaded cars therefrom for transportation to complainant's sugar mill, will result in irreparable injury to the complainant; and that the cost of transportation by cart or otherwise to defendant's nearest public stations would be prohibitive and make it impossible for complainant to compete with other mill owners. Such being the case, we regard the facts alleged as sufficient to ground federal jurisdiction. If the defendant has a good defense to the action, that does not affect the question as to what is the amount in dispute. Smithers v. Smith, supra, and cases there cited.

[4] We also are of the opinion that the record sufficiently discloses that the complainant has not an adequate remedy at law, and that the damages liable to arise, should the defendant be permitted to carry out its threat of tearing up complainant's switches and side tracks and interfering with the reasonable conduct of its business, are of such a character as to call for equitable relief.

[5, 6] The principal question in the case is that raised under the last assignment of error, as to whether the greasing charges are illegal; they not having been included in any tariff of rates or charges posted and filed by the defendant with the Public Service Commission of Porto Rico and with its approval. If they are illegal, the complainant may enforce its right in any court having jurisdiction of the matter, without a preliminary decision to that effect by the Public Service Commission of Porto Rico. Mitchell v. Pennsylvania R. R. Co., 230 U. S. 247, 266, 33 Sup. Ct. 916, 57 L. Ed. 1472; People of Porto Rico v. American R. R. Co. of Porto Rico, 254 Fed. 369, 378, 165 C. C. A. 589.

By Act No. 70 of the Laws of Porto Rico of 1917, approved December 6, 1917, it is provided:

"Section 3.—It shall be the duty of every public-service company:

"(d) * * * Annually or whenever and in the form required by the commission to file with the commission tariffs and time-tables, showing prices, charges, rates, fees, or other compensation asked, demanded, or received for any service rendered by said company and, if a common carrier, showing the method of distribution of trains, cars, vehicles, vessels, motive power, or other facilities operated or owned by said common carrier.

"It shall also be the duty of every public service company to post and publish such tariffs and time-tables," etc.

"(e) * * * To make no change in any tariff or time-table without the previous approval of the commission."

"Section 4.—It shall be lawful for every public service company—

"(a) * * * To demand, collect, and receive fair, just, and reasonable prices, rates, fares, or charges for services rendered to any person or company; and to establish a sliding scale of rates, fares or charges: Provided, that a schedule showing all prices, rates, fares, or charges shall first have been filed with the commission and approved by it; And provided further,

that all rates, fares, or charges which have been filed with the extinct Executive Council and approved by it shall continue and be in full force and effect until altered, amended, modified, or repealed by the commission as provided in this act."

"Section 95.—* * * If any public service company shall violate any of the provisions of this act, or shall perform any act herein prohibited, or shall fail, omit, neglect, or refuse to perform any duty enjoined upon it by this act; * * * such public service company, for such violation, omission, failure, neglect, or refusal shall forfeit and pay to the treasurer of Porto Rico a sum not less than fifty (50) dollars or more than one thousand (1,000) dollars, to be recovered by an action instituted in the name of the people of Porto Rico in the District Court of San Juan, section 1, which court is hereby clothed with exclusive jurisdiction to hear and determine all such actions, and determine the amount of the fine."

As by section 3 (d) it was made the duty of the defendant to file with the commission tariffs and time-tables, showing prices, charges, rates, fees, or other compensation asked, *demanded* or received for *any service* rendered by said company, and by section 4 (a) it was made lawful for it to demand, collect, and receive rates, fares or charges for services rendered, if it shall have first filed a schedule thereof with the commission and obtained its approval, and by section 24 no rates were to become effective until published and approved by the Commission, and by section 95 it was made subject to a penalty or fine for violating any of the provisions of the act or failing to perform any duty enjoined upon it by the act, and, inasmuch as it has failed to file a schedule of the charges demanded for the service of greasing switches with and obtain the approval of the commission thereto, which sections 3 (d) and 4 (a) made it its duty to do before making the demand, it was guilty of an illegal act in demanding the greasing charges herein complained of.

[7] We recognize that by section 28 of the act authority is given to the commission, either upon complaint or on its own motion, after hearing, to "determine that any rates which have been collected * * * by any public service company * * * are in excess of the rates contained in the tariffs or schedules of any such company on file and published as herein provided and in effect and applicable at the time the said service was rendered," and award and direct the payment to the complainant of any damages sustained in consequence of such collection, and that, if the public service company does not comply with the award, the party to whom such payment is directed to be made may sue therefor in any District Court of Porto Rico, and that no action shall be brought on account of such wrongful collection unless the commission shall have determined that the rate was in excess of the rate contained in the tariffs or schedules, and then only recover such damages as may have been awarded and directed to be paid by the commission. But we do not regard this section as applicable to the facts of this case and as precluding the complainant from maintaining this proceeding: First, because the rates or charges demanded have not been collected; second, because the sums or payments demanded by the defendant are not rates contained in the tariffs or schedules which it has filed, but are extralegal charges or demands for a different service from that contained in its filed schedules; and, third, because the remedy afforded by section 28 has nothing to do with the threatened injury to complain-

ant through tearing up the switches and side tracks and interfering with the conduct of its business.

If it is just that the defendant should demand and receive greasing charges of the character in question, the way is open to it to obtain the right by including such charges in its tariffs or schedules of rates and charges, filing the same with the commission, and obtaining its approval.

The decree of the United States District Court for the District of Porto Rico is affirmed, with costs to the appellee.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes