## PURE OIL CO. v. PURITAN OIL CO., Inc.

### No. 185.

Circuit Court of Appeals, Second Circuit.

March 14, 1942.

Kelly Bell, of Chicago, Ill., (Gross, Hyde & Williams of Hartford, Conn., and Vinson, Elkins, Weems & Francis, of Houston, Tex., of counsel) for appellant.

George H. Cohen, Joseph W. Ress, and Naaman Cohen, all of Hartford, Conn., for appellee.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This appeal involves only the question of the substantive jurisdiction of the district court. The complaint on its face appears to have been framed under the Trade-Mark Act of 1905 alone; it alleged that the plaintiff was the owner of a number of registered trade-marks which contained the word, "Pure," or its first three letters, "Pur," and that the defendant, which operated a "service station" in Hartford, Connecticut, had infringed these marks by selling oil and gasoline under the name, "Pure," in interstate commerce. Upon the trial it appeared that the plaintiff did a large interstate business in the sale of gasoline and oil (originally including the supply of filling stations in Connecticut which it had, however, abandoned before action brought), and that it sold its products under a number of names, registered as trade-marks, all containing the letters, "Pur," which had acquired a proprietary secondary meaning. The defendant operates a "service station" in Hartford where it sells gasoline and oil under the name, "Pure" and "Puritan," by dispensing these substances to all automobiles which come along; 95% of these are "recurrent" customers. It imported into Connecticut from Indiana some translucent "globes" which it has placed upon the pumps by which it dispenses its gasoline and which contain the word "Pure," and it displays the word, "Puritan," at the station. The judge held that the plaintiff had not shown that the defendant had used the registered mark in interstate commerce, or that the value of the "amount in controversy" was $3,000; he also held that the "cause of action" set up under the Trade-Mark Act was not "substantial" enough to confer an incidental or pendent jurisdiction under the doctrine of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L. Ed. 114, and Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 324, 325, 59 S.Ct. 191, 83 L.Ed. 195. For these reasons he dismissed the complaint for lack of jurisdiction.

■ We start with the fact that the only wrong forbidden by § 96 of Title 15 U.S.C.A. is a "use" of the mark in interstate commerce (United States Printing and Lithograph Company v. Griggs, Cooper & Co., 279 U.S. 156, 49 S.Ct. 267, 73 L.Ed. 650), and it has been often held, as the plaintiff argues, that jurisdiction depends solely upon the allegations of the complaint. City Railway Co. v. Citizens Street R. R. Co., 166 U.S. 557, 17 S.Ct. 653, 41 L.Ed. 1114; Pacific Electric Ry. Co. v. Los Angeles, 194 U.S. 112, 24 S.Ct. 586, 48 L.Ed. 896; Hull v. Burr, 234 U.S. 712, 34 S.Ct. 892, 58 L.Ed. 1557; South Covington C. & St. Ry. Co. v. Newport, 259 U.S. 97, 42 S.Ct. 418, 66 L.Ed. 842; Mosher v. Phoenix, 287 U.S. 29, 53 S. Ct. 67, 77 L.Ed. 148; Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062; Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152; Moore v. Chesapeake & O. Ry. Co., 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755. If so, the complaint would seem to be sufficient, because, although it alleged specifically only that the defendant operated a "service station" in Hartford, yet the ninth article characterized the sales at that station as follows: "Defendant has * * * used the name , 'Pure' * * * in interstate commerce in connection with the sale of gasoline." Certainly there is no inherent contradiction between operating a local "service station" and using the name in interstate commerce, and while it may be argued that the allegation was one of law, it was certainly enough to admit amendment and the facts which could have been substituted would have sufficed, as we shall show. Hence if we were confined to the allegations in the complaint, we should hold that the action lay under § 96 of Title 15 U.S.C.A.; or if not that, certainly it presented a not "plainly unsubstantial" claim of jurisdiction under that section which gave the court pendent jurisdiction over the cause of action for unfair competition.

■ The defendant insists, however, that we may not stop at the complaint since the jurisdictional allegations are in issue; on the contrary, that the plaintiff has the burden of showing that the case was "really and substantially" within the court's jurisdiction. § 80 of Title 28 U.S.C.A.; McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; KVOS, Inc., v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; Gibbs v.

Buck, 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed 1111; Thomson v. Gaskill, 314 U.S. ——, 62 S.Ct. 673, 86 L.Ed. ——. All those cases chanced to concern the issue of the "amount in controversy" and did not arise under a statute conferring a special jurisdiction like § 97 of Title 15 U.S.C.A. Nevertheless, we are not disposed to limit § 80 of Title 28 U.S.C.A. to causes, jurisdiction over which was given the district court by the same statute in which it first appeared (Act of March 3, 1875, 18 Stat. 470). It imposes an affirmative duty upon the district court jealously to scrutinize its own jurisdiction, an admonition which it would be unreasonable to circumscribe to causes now governed by § 41(1) of Title 28 U.S.C.A. Therefore we agree with the defendant that the doctrine now established by the decisions we have cited is general, and that whenever the jurisdictional allegations are denied, the plaintiff must prove them. On the other hand we think that, judged by the facts, the plaintiff succeeded in asserting a jurisdiction under the Trade-Mark Act which was not "plainly unsubstantial" and which therefore entrained jurisdiction over unfair competition. We should not say as much for the evidence that the translucent "globes" had come into Connecticut from Indiana. True, they were "signs * * * intended to be used * * * in connection with the sale" of gasoline; but they were certainly not "used" as signs in interstate commerce, while they were being brought to Hartford preparatory to being set up; if they were within § 96 it could only be by virtue of the later use made of them to sell gasoline. Ironite Co. v. Guarantee Waterproofing Co., 8 Cir., 64 F.2d 608, concerned quite another situation; the mark had been affixed to the goods before their journey began, and the only question was whether it was the statutory "use" for the buyer to carry his own goods so marked into another state for his own purposes.

The use of the word, "Pure," to sell gasoline and of the sign, "Puritan," at the station, comes much closer to compliance with § 96. Cars come to the "service station" from outside Connecticut to be filled; they carry away what they get and certainly some part of it crosses the border in their tanks. It is true that this is a small part of the defendant's total sales—apparently only about five per cent—but the amount does not matter if pro tanto the business violates the act. Omitting irrelevant words, the section reads as follows: "Any person who shall * * * imitate any * * * trade-mark and affix the same to merchandise * * * or to labels, signs, prints, packages, wrappers or receptacles intended to be used * * * in connection with the sale of merchandise * * * and shall use * * * such * * * imitation in commerce among the several States." The defendant does affix an "imitation" of the mark to "receptacles intended to be used * * * in connection with the sale" of gasoline in interstate commerce, and it does not strain the sense to say that in so attracting customers it "uses" the "imitation" in that commerce. Faced with the strict necessity of deciding, we should perhaps not say that that was the kind of "use" intended; rather it would seem from the context that the "receptacles" or "signs" which bear the mark must themselves move in interstate commerce. If they need not, the section would cover any use of a registered trade-mark which facilitated an interstate sale; a doubtful interpretation at best, which arguendo we reject. Nevertheless, it does not appear to us so untenable an interpretation as to make an assertion of jurisdiction based upon it "plainly unsubstantial." On the contrary, we think it a not implausible theory that so to use a mark is to "use" it "in commerce." There can be no doubt that Congress might have so declared had it been minded; the Trade-Mark Cases, 100 U.S. 82, 25 L.Ed. 550, do not stand in the way. The decision of a majority of this court in Treasure Imports, Inc., v. Amdur, 127 F.2d 3, does not conflict with our conclusion. The jurisdiction of the court under the Trade-Mark Act had only sales made before registration to support it. Even so, it was not altogether clear that the assertion was "plainly unsubstantial" because of the dissent; but, be that as it may, it appears to us that there is much difference between the absence of any invasion whatever of the registered mark and the question whether it is used "in" interstate commerce when it induces, or may induce, people to enter into such commerce.

■ The plaintiff asks us in the event of a reversal to give judgment on this record, as it has abandoned any claim for damages and asks only for an injunction. On the whole we think that, since the merits have never been really considered, although most of the ultimate facts were found, the cause should go back for another trial.

Judgment reversed; cause remanded.